[No. D024062. Fourth Dist., Div. One. June 13, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANCISCO JAVIER AYON, Defendant and Appellant.

**COUNSEL**

Francis J. Bardsley, Public Defender, Karsten Boone and Larry Ainbinder, Deputy Public Defenders, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and David Delgado-Rucci, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HALLER, J.**—A jury convicted Francisco Javier Ayon of seven counts of robbery (Pen. Code,[1] § 211), two counts of attempted robbery (§§ 664/211) and two counts of possession of a firearm by a felon (§ 12021, subd. (a)). The jury also found true allegations Ayon had personally used a firearm in all of the robberies and attempted robberies. (§ 12022.5, subd. (a).) In a bifurcated proceeding, the jury found Ayon had three prior serious felony convictions within the meaning of section 667, subdivision (a)(1), and four prior serious or violent felony convictions within the meaning of section 1170.12, which constituted "strikes" under the three strikes law.[2]

On the robbery and attempted robbery counts, the trial court sentenced Ayon to 9 consecutive 25-year-to-life sentences for a total sentence of 225

---

[1] All statutory references are to the Penal Code.

[2] This case arises under section 1170.12, which is a codification of the three strikes initiative. The initiative was enacted by the voters as Proposition 184 on November 8, 1994, and became effective November 9, 1994. Earlier, the Legislature had enacted the three strikes statute—section 667, subdivisions (b) through (i)—as an urgency measure, effective March 7, 1994. The provisions of section 1170.12 correspond generally to section 667, subdivisions (b) through (i). While the section numbering and subdivision lettering are different, the substantive provisions of each law are the same insofar as the issues in this case are concerned.

years to life. Pursuant to section 654, the court stayed sentence on the possession of a firearm by a felon counts. The court also stayed sentence on the three prior serious felony conviction enhancements (§ 667, subd. (a)(1)).

Ayon appeals, contending the trial court erred in calculating the minimum term of his indeterminate sentence. Rather than a term of 225 years to life, Ayon maintains he should have been sentenced to 48 years to life.

The Attorney General contends the trial court acted improperly by staying the enhancements for the three prior serious felony convictions (§ 667, subd. (a)(1)) and therefore imposed an unauthorized sentence. The Attorney General maintains that under the three strikes law the proper sentence is 240 years to life.

## FACTS

Between December 18, 1994, and January 9, 1995, Ayon robbed three convenience stores, two gas stations and two liquor stores. In all of these robberies, Ayon used a gun. On January 9, he was caught by a sheriff's deputy while trying to rob two victims in a liquor store at gunpoint. All victims were in northern or inland San Diego County.

In April 1981, Ayon was convicted of residential burglary (No. CRV6852). In February 1983, Ayon was convicted of residential burglary (No. CRN7893). In November 1983, Ayon was convicted of two counts of residential burglary (No. CRN8716).

## DISCUSSION

### I. *Minimum Term of Indeterminate Sentence*

■ Ayon contends the trial court erred in determining the minimum term of his indeterminate sentence under the three strikes law. According to Ayon's argument, rather than rely on section 1170.12, subdivision (c)(2)(A)(ii), to determine the minimum term, the trial court should have used section 1170.12, subdivision (c)(2)(A)(iii), and sentenced him to 48 years to life. Given the statutory language, we conclude he is mistaken.

Section 1170.12, subdivision (c),[3] provides in pertinent part:

"(c) For purposes of this section, and in addition to any other enhancements or punishment provisions which may apply, the following shall apply where a defendant has a prior felony conviction:

---

[3] In the original three strikes statute, the same provision is contained in section 667, subdivision (e).

"...........................

"(2)(A)   If a defendant has two or more prior felony convictions, as defined in paragraph (1) of subdivision (b), that have been pled and proved, the term for [the] current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of

"(i)   three times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior felony convictions, or

"(ii)   twenty-five years or

"(iii)   the term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046.[4]

"(B)   The indeterminate term described in subparagraph (A) of paragraph (2) of this subdivision shall be served consecutive to any other term of imprisonment for which a consecutive term may be imposed by law. Any other term imposed subsequent to any indeterminate term described in subparagraph (A) of paragraph (2) of this subdivision shall not be merged therein but shall commence at the time the person would otherwise have been released from prison."

From this language, it is clear that a court sentencing a three strikes defendant must select as the minimum term of the indeterminate sentence the greater of three options.

Ayon does not dispute this proposition. What Ayon does dispute is the court's selection of 25 years as the greatest of the 3 options available to it. He maintains the trial court should have employed option (iii), which provides for adding all enhancements to the term provided for under the determinate sentencing law. Under Ayon's calculation, the minimum term would be 48 years and since this is greater than either of the other 2 options,

---

[4]Because subdivision (c)(2)(A) of section 1170.12 provides the sentencing court with three formulas by which to determine the minimum term, for simplicity we shall refer to the calculation pursuant to subdivision (c)(2)(A)(i) as "option (i)," the calculation pursuant to subdivision (c)(2)(A)(ii) as "option (ii)," and the calculation pursuant to subdivision (c)(2)(A)(iii) as "option (iii)."

he should have been sentenced to 48 years to life rather than 225 years to life.[5]

Preliminarily, we note Ayon's calculation (see fn. 5, *ante*) is based on a faulty premise. Instead of considering each count separately, Ayon incorrectly combined the sentences for all of his current convictions in using the formula of option (iii). (See *People* v. *Cartwright* (1995) 39 Cal.App.4th 1123, 1141-1143 [46 Cal.Rptr.2d 351] [rejecting claim the trial court was required to calculate defendant's entire sentence on all counts rather than each count separately under each of the three options].)

Option (iii) provides for computing the minimum term of the indeterminate sentence by calculating the determinate sentence of the underlying conviction—*not* the underlying conviction*s*—plus applicable enhancements. (*People* v. *Cartwright*, *supra*, 39 Cal.App.4th at pp. 1141-1143.) While Ayon is correct that option (iii) calls for calculation of the minimum term under the determinate sentencing rules, he has incorrectly computed the minimum term under option (iii) by applying the determinate sentencing rules to all of the current convictions to arrive at an "aggregate term" as defined by section 1170.1, subdivision (a). (See fn. 5, *ante*.)

Under option (iii), determinate sentencing rules are properly applied singularly to each current conviction. Nothing in the language of option (iii) suggests the "aggregate" term should be calculated. Nor does option (iii) in any way indicate multiple current felony convictions must be combined, as opposed to considered separately, when calculating the mandatory minimum term. In *People* v. *Anderson* (1995) 35 Cal.App.4th 587, 602 [41 Cal.Rptr.2d 474], the Court of Appeal, referring to the comparable provision under the original three strikes law passed by the Legislature (§ 667, subds. (b)-(i)), observed: "The statute clearly mandates that each count of a multiple count conviction will be sentenced independently under section 667, subdivision (e)." (In the original three strikes statute, subdivision (e) of section 667 is the corresponding provision to subdivision (c) of section 1170.12.)

To the extent that Ayon relies on *People* v. *Anderson*, *supra*, 35 Cal.App.4th 587, *People* v. *Martin* (1995) 32 Cal.App.4th 656 [38 Cal.Rptr.2d 776] and

---

[5]To get to the figure of 48 years, Ayon designated count 3, a robbery count, as the primary term, and the remaining counts as subordinate terms. He then used the statutory upper term of five years for count 3, six additional one-year terms (one-third the midterm of three years) for the remaining robbery counts and two additional eight-month terms (one-third the midterm of two years) for the attempted robbery counts to reach a sum of twelve years, four months. Using similar determinate sentencing principles, Ayon next calculated the maximum total enhancements he could receive for the personal gun use allegations (§ 12022.5, subd. (a)) on each of the robbery and attempted robbery counts as 20 years, 8 months. Ayon then added fifteen years (five years each) for the three prior serious felony conviction allegations (§ 667, subd. (a)(1)). Adding the 3 subtotals (12 years, 4 months plus 20 years, 8 months plus 15 years) yields a total of 48 years.

*People* v. *Ramirez* (1995) 33 Cal.App.4th 559 [39 Cal.Rptr.2d 374] for the proposition that the concept of aggregate terms as developed under the determinate sentencing law has application to a third striker with multiple current felony convictions, his reliance is misplaced. Those cases, which deal with two strike defendants, are inapposite on this point.

Second, and significantly, Ayon's argument and calculation of a 48-year-to-life sentence ignores the fact that the three strikes law contemplates consecutive sentencing for each of the current strikes except for situations that call for a section 654 analysis. (§ 1170.12, subds. (a)(6), (7), (8), & (c)(2)(B); see also *People* v. *Martin*, *supra*, 32 Cal.App.4th at pp. 661-664; *People* v. *McKee* (1995) 36 Cal.App.4th 540, 545-546 [42 Cal.Rptr.2d 707].) Under the three strikes law, Ayon's sentences on his current seven robbery convictions and two attempted robbery convictions must run consecutively.

Here, in determining the minimum term for the indeterminate sentence, the trial court correctly chose option (ii) and imposed consecutive terms of 25 years to life on the 9 operative current felonies. Option (ii) in this case, as we shall demonstrate below, yields the greatest sentence of the three options for each count.

Under option (i), which "is calculated as three times the term otherwise provided by law, i.e., triple the base term" (*People* v. *Anderson*, *supra*, 35 Cal.App.4th at p. 595), the minimum term of the indeterminate sentence is nine years (three times the midterm of three years) for each robbery count and six years (three times the midterm of two years) for each attempted robbery count.[6]

Under option (ii), the minimum term of the indeterminate sentence for each count is, of course, 25 years.

Under option (iii), which "is the term calculated under section 1170, including any enhancement" (*People* v. *Anderson*, *supra*, 35 Cal.App.4th at p. 595), the minimum term of the indeterminate sentence for each robbery count is twenty-two years (the midterm of three years for robbery, the midterm enhancement of four years for the personal gun use allegation and fifteen years (five years each) for the three prior serious felony convictions under section 667, subd. (a)(1)). Under option (iii), the minimum term of the

---

[6]This example assumes the selection of the midterm. Where warranted by the facts, the trial court could select the lower term or the upper term.

indeterminate sentence for each attempted robbery conviction is twenty-one years (the midterm of two years for attempted robbery, the midterm enhancement of four years for the personal gun use allegation and fifteen years for the three prior serious felony convictions).

Ayon argues unpersuasively that if the alternatives of section 1170.12, subdivision (c)(2)(A), were intended to be applied on a count-by-count basis, option (i) and option (iii) will almost never apply and thus are mere surplusage.

Option (i) will apply where the "term otherwise provided as punishment" exceeds eight years. This includes such offenses as continuous child molestation (§ 288.5), which has a midterm of 12 years and an upper term of 16 years; certain forms of kidnapping (§ 208, subds. (b) & (d)), which have an upper term of 11 years; voluntary manslaughter (§ 193, subd. (a)), which has an upper term of 11 years; robbery of an inhabited dwelling committed in concert with at least 2 other persons (§ 213, subd. (a)(1)(A)), which has an upper term of 9 years; and carjacking (§ 215, subd. (b)), which has an upper term of 9 years. Option (iii) will apply under a scenario in which the defendant has numerous enhancements that bring the determinate sentence to more than 25 years. "While such cases may not be common, it is the experience of this court that they are not as rare as defendant suggests." (*People* v. *Cartwright, supra,* 39 Cal.App.4th at p. 1143.) "The Legislature clearly intended options (i) and (iii) to be viable, independent alternatives, one incorporating enhancements and the other not." (*People* v. *Anderson, supra,* 35 Cal.App.4th at p. 596.)

Ayon also argues the trial court was not required to impose full-strength consecutive sentences of 25 years to life because the drafters of the three strikes law failed to include language the sentences were to be "full, separate and consecutive," which is present in other statutes. (See, e.g., § 667.6, subd. (c).) However, Ayon's attempt to argue that absence of such language shows the drafters intended an aggregate consecutive sentencing scheme rather than a full-strength consecutive sentencing scheme must fail. The drafters of the three strikes law included the following language that explicitly shows their intent: "There shall not be an aggregate term limitation for purposes of consecutive sentencing for any subsequent felony conviction." (§ 1170.12, subd. (a)(1).)

## II. *Mandatory Five-year Enhancements*

■■ ■■ The Attorney General contends the trial court erred in failing to impose three 5-year enhancements for Ayon's three prior serious felony convictions (§ 667, subd. (a)(1)).[7] We agree.

Where a person has been convicted of a serious felony in the current case, and it has been alleged and proved the person suffered a prior serious felony conviction within the meaning of section 667, subdivision (a)(1), the trial court must impose a consecutive five-year term for each such prior conviction that has been brought and tried separately. The trial court has no discretion in the matter; the imposition of such a term is mandatory. (*People v. Valencia* (1989) 207 Cal.App.3d 1042, 1045 [255 Cal.Rptr. 180].)

Since Ayon's current felonies are serious and it was alleged and proved he suffered three prior serious felony convictions within the meaning of section 667, subdivision (a)(1), and a life prior under section 1170.12, subdivisions (b) and (c), the trial court was required to impose three 5-year enhancements.

Imposition of a five-year enhancement for a prior conviction brought and tried with other priors that were used to qualify as strikes does not constitute a prohibited dual use of such conviction. After addressing a similar relationship of the three strikes law to the enhancement provision of section 667, subdivision (a)(1), the court in *People v. Anderson, supra,* 35 Cal.App.4th 587 concluded there was no dual use under section 654 in this type of situation and the trial court was obliged to impose the higher sentence of the three strikes law in addition to any enhancements. The courts in *People v. Ramirez, supra,* 33 Cal.App.4th 559, and *People v. Dominguez* (1995) 38 Cal.App.4th 410 [45 Cal.Rptr.2d 153], reached the same conclusion as did the court in *Anderson.* We concur.

Accordingly, we find the trial court was required to impose three 5-year enhancements under section 667, subdivision (a)(1), in addition to the

---

[7]Even though the Attorney General did not file an appeal here, we consider this contention because it is based on the theory that by failing to impose the mandatory enhancements, the court imposed an unauthorized sentence. An unauthorized sentence is an "exception to the general requirement that only those claims properly raised and preserved by the parties are reviewable on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 354 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) Furthermore, it is well established that when a defendant lays his cause on our doorstep, he subjects himself to a thorough review of the proceedings below, and an unauthorized sentence must be vacated and a proper sentence imposed whenever such a mistake is discovered. (*People v. Hickey* (1980) 109 Cal.App.3d 426, 435 [167 Cal.Rptr. 256].)

punishment required under section 1170.12, subdivision (c). The failure to impose the enhancements constitutes an unauthorized sentence, which we are required to correct. (See fn. 7, *ante.*) The trial court should have sentenced Ayon to a term of 240 years to life.

### III.   *Cruel and Unusual Punishment*

■   We asked the parties to submit supplemental briefing on the question of whether the sentence in this case constituted cruel and unusual punishment. We shall proceed to analyze the issue in light of a sentence of 240 years to life. (See pt. II, *ante.*)

We begin by noting that the minimum term of Ayon's indeterminate sentence, now 240 years, acts merely as a "gauge of parole eligibility." (*People* v. *Anderson, supra,* 35 Cal.App.4th at p. 596.) Under section 1170.12, subdivision (a)(5), Ayon cannot receive credits that exceed more than one-fifth of his total term of imprisonment. Therefore, for all practical purposes, Ayon has received the functional equivalent of a life sentence without the possibility of parole.

Citing *Solem* v. *Helm* (1983) 463 U.S. 277 [77 L.Ed.2d 637, 103 S.Ct. 3001], Ayon argues that if the .three strikes law is interpreted to mandate separate, full-strength consecutive 25-year-to-life sentences where there are multiple current convictions, the law is unconstitutional on its face as violative of the Eighth Amendment prohibition against cruel and unusual punishment. In *Solem,* the defendant, was sentenced to a life term without possibility of parole for a seventh nonviolent felony. A bare majority of the United States Supreme Court found the sentence was unconstitutional. The majority held ". . . a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." (*Id.* at p. 292 [77 L.Ed.2d at p. 650].)

Ayon's reliance on *Solem* is weakened by *Harmelin* v. *Michigan* (1991) 501 U.S. 957 [115 L.Ed.2d 836, 111 S.Ct. 2680], the high court's most recent statement on whether the Eighth Amendment to the United States Constitution includes a proportionality guarantee in noncapital cases. In *Harmelin,* a life sentence without possibility of parole for possessing 672 grams of cocaine was upheld. While *Harmelin* did not contain a majority

opinion with respect to the issue, two justices concluded the Eighth Amendment contains no proportionality guarantee (*id.* at p. 965 [115 L.Ed.2d at p. 846] (opn. of Scalia, J.)) and three other justices concluded the amendment forbids only those sentences that are " ' grossly disproportionate' " to the crime (*id.* at p. 1001 [115 L.Ed.2d at p. 869] (opn. of Kennedy, J.)). Even those justices recognizing a guarantee of proportionality review stressed that, outside the context of capital punishment, successful challenges to particular sentences are " ' "exceedingly rare" ' " because of the "relative lack of objective standards concerning terms of imprisonment . . . ." (*Ibid.*)

We also find *Solem* v. *Helm, supra,* 463 U.S. 277, is not controlling here because in that case the high court focused on the nonviolent nature of the defendant's current offense of uttering a " 'no account' " check (" 'one of the most passive felonies a person could commit' ") and his prior offenses. (*Id.* at p. 296 [77 L.Ed.2d at p. 653].) The high court observed a life sentence for fourth time heroin dealers and other violent criminals would pass constitutional muster. (*Id.* at p. 299, fn. 26 [77 L.Ed.2d at p. 655].) Ayon's current offenses—seven armed robberies and two attempted armed robberies—stand in marked contrast to the defendant's crimes in *Solem.*

Both in this jurisdiction and in other jurisdictions, habitual offender statutes have long withstood the constitutional claim of cruel and/or unusual punishment. (See, e.g., *In re Rosencrantz* (1928) 205 Cal. 534 [271 P. 902]; *Rummel* v. *Estelle* (1980) 445 U.S. 263 [63 L.Ed.2d 382, 100 S.Ct. 1133].) The United States Supreme Court addressed the constitutionality of a Texas recidivist statute requiring life imprisonment upon conviction of a third felony in *Rummel* v. *Estelle, supra,* 445 U.S. 263. Over the course of nine years, Rummel had been convicted of fraudulently using a credit card to obtain $80 worth of goods or services, passing a forged check in the amount of $28.36 and obtaining $120.75 by false pretenses. (*Id.* at pp. 265-266 [63 L.Ed.2d at pp. 385-386].) In response to Rummel's argument that life imprisonment was "grossly disproportionate" to the three felonies he had committed, the high court concluded the mandatory life sentence did not constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments. (*Id.* at p. 285 [63 L.Ed.2d at pp. 397-398].) When Ayon's current offenses (seven armed robberies and two attempted robberies) and prior felony convictions (four residential burglaries) are contrasted with the crimes at issue in *Rummel,* it readily appears the magnitude of Ayon's criminal activity significantly dwarfs the magnitude of Rummel's crimes.

Ayon has not expressly claimed that his sentence violates the prohibition against cruel or unusual punishment contained in California Constitution, article I, section 17; however, we shall examine this question as well.

■ The power to define crimes and prescribe punishment is a legislative function. The judiciary may not interfere in this process unless the statute prescribes a penalty so severe in relation to the crime as to violate the constitutional prohibition against cruel or unusual punishment. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 477-478 [194 Cal.Rptr. 390, 668 P.2d 697]; *In re Lynch* (1972) 8 Cal.3d 410, 423-424 [105 Cal.Rptr. 217, 503 P.2d 921].)[8] The basic test is whether the punishment is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch, supra,* 8 Cal.3d at p. 424, fn. omitted.) Successful challenges to proportionality are an "exquisite rarity." (*People* v. *Weddle* (1991) 1 Cal.App.4th 1190, 1196 [2 Cal.Rptr.2d 714].)

■ *In re Lynch* applied a three-pronged approach to determine whether a particular punishment is disproportionate to the offense for which it is imposed. (*In re Lynch, supra,* 8 Cal.3d at pp. 429-438.) Under the first prong, the court examines the "nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." (*Id.* at p. 425.) Second, the court compares the challenged punishment with punishments prescribed for more serious crimes in the same jurisdiction. (*Id.* at p. 426.) Finally, the challenged punishment is compared with punishments for the same offense in other jurisdictions. (*Id.* at p. 427.)

The Supreme Court in *People* v. *Dillon* refined the first prong of the *In re Lynch* analysis. As to evaluating the nature of the offense, courts should examine "not only the offense in the abstract" but also " 'the facts of the crime in question.' " (*People* v. *Dillon, supra,* 34 Cal.3d at p. 479.) Courts should consider the "totality of the circumstances," including motive, the way the crime was committed, the extent of the defendant's involvement, and the consequences of the defendant's acts. (*Ibid.*) With respect to the nature of the offender, a court should ask whether ". . . the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*Ibid.*)

The analysis developed in *In re Lynch* and *People* v. *Dillon* merely provides guidelines for determining whether a given punishment is cruel or

---

[8]*In re Lynch* held an indeterminate sentence of one year to life for recidivists who commit indecent exposure under section 314 was void as cruel or unusual punishment. (*In re Lynch, supra,* 8 Cal.3d at p. 439.) In *People* v. *Dillon,* the California Supreme Court reaffirmed *In re Lynch* and concluded that under the facts of the case, the life imprisonment of a 17-year-old defendant for first degree murder based on a felony-murder theory violated California's constitutional prohibition against cruel or unusual punishment. (*People* v. *Dillon, supra,* 34 Cal.3d at pp. 450-452, 477, 482-483, 489.)

unusual and the importance of each prong depends on the facts of the specific case. (*In re DeBeque* (1989) 212 Cal.App.3d 241, 249 [260 Cal.Rptr. 441].) Determinations whether a punishment is cruel or unusual may be made based on the first prong alone. (See, e.g., *People v. Dillon, supra,* 34 Cal.3d at pp. 479, 482-488; *People v. Weddle, supra,* 1 Cal.App.4th at pp. 1198-1200; *People v. Young* (1992) 11 Cal.App.4th 1299, 1308-1311 [15 Cal.Rptr.2d 30].) The defendant has the burden of establishing that his punishment is greater than that imposed for more serious offenses in California and that similar offenses in other states do not carry punishments as severe. (See *In re DeBeque, supra,* 212 Cal.App.3d at pp. 254-255.)

■ With the above principles in mind, we consider the nature of Ayon's current offenses and his recidivist behavior. We conclude that a sentence of 240 years to life—the functional equivalent of life without possibility of parole—does not constitute cruel or unusual punishment based on Ayon's current offenses and criminal history.

Recidivism in the commission of multiple felonies poses a manifest danger to society justifying the imposition of longer sentences for subsequent offenses. (See *People v. Karsai* (1982) 131 Cal.App.3d 224, 242 [182 Cal.Rptr. 406] [recidivist statute for violent sex offenders], overruled on other grounds in *People v. Jones* (1988) 46 Cal.3d 585, 600, fn. 8 [250 Cal.Rptr. 635, 758 P.2d 1165].) ■ In discussing recidivist statutes, the United States Supreme Court has stated: "The purpose of a recidivist statute . . . is . . . to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction." (*Rummel v. Estelle, supra,* 445 U.S. at pp. 284-285 [63 L.Ed.2d at p. 397].)

■ The probation report reflects that at the time of sentencing Ayon had a criminal history going back 15 years, including multiple burglary convictions, auto theft convictions and grand theft convictions and a 1992 conviction of possession of a firearm by a felon. He also has been convicted of escape from penal institutions and of being a prisoner in possession of a

weapon. Moreover, Ayon's performance under grants of probation and parole was generally unsatisfactory. When he committed the current offenses, Ayon was on parole for being a felon in possession of a firearm and possession of a silencer. While the record on appeal does not show that his prior strike convictions involved actual violence, the three strikes law targets not only those repeat felons with prior violent felony convictions but also those, like Ayon, with prior serious felony convictions. (§ 1170.12, subd. (b).) Thus, without even considering the nature of his current offenses, Ayon, at age 32, was before the trial court as a career criminal who had preyed on society and failed to benefit from multiple incarcerations and periods of parole and probation.

Moreover, a comparison of Ayon's punishment for his current crimes with the punishment for other crimes in California is inapposite since it is his recidivism in combination with his current crimes that places him under the three strikes law. Because the Legislature may constitutionally enact statutes imposing more severe punishment for habitual criminals, it is illogical to compare Ayon's punishment for his "offense," which includes his recidivist behavior, to the punishment of others who have committed more serious crimes,[9] but have not qualified as repeat felons. Other such offenders would likely receive similar or longer sentences under the new law if the law were applicable to them because of recidivist conduct.

With respect to the third *Lynch* prong concerning sentencing schemes in other jurisdictions, a comparison of other states' penal statutes for habitual criminals with the three strikes law provides support for concluding a 240-year-to-life term, or the functional equivalent of a life sentence without possibility of parole as applied to Ayon, is not cruel and/or unusual punishment. (See *Rummel* v. *Estelle, supra,* 445 U.S. 263; cf. *Bordenkircher* v. *Hayes* (1978) 434 U.S. 357 [54 L.Ed.2d 604, 98 S.Ct. 663] [imposition of life imprisonment under recidivist statute for uttering a forged instrument in the amount of $88.30 upheld against vindictive prosecution claim].)

Further, it may be inferred from the passage of Proposition 184 that considerably more than two-thirds of California voters do not consider it cruel or unusual punishment for a recidivist offender convicted of a serious felony with prior convictions for violent or serious felonies to receive a 25-year-or-more-to-life sentence.[10]

In light of Ayon's current offenses and extensive continued criminal conduct, we cannot say imposition of the functional equivalent of a life

---

[9] We observe the list of crimes more serious than armed robbery is a rather short list.

[10] The legislative analysis for Proposition 184 informed the voters that a defendant with two prior serious or violent convictions whose current crime is a violent or serious felony would

without possibility of parole sentence under the three strikes law either shocks the conscience or violates notions of human dignity. Rather, application of this law to Ayon results from the need to deter offenders, like him, who repeatedly commit such crimes and to segregate them from the rest of society. This does not constitute cruel or unusual punishment.

### DISPOSITION

The sentence in this case is reversed. The trial court is directed to impose a new sentence, consisting of an indeterminate term of 225 years to life, plus three 5-year enhancements or 15 years for the prior serious felony convictions under section 667, subdivision (a)(1). The trial court is directed to prepare an amended abstract of judgment reflecting such changes in the sentence and to forward it to the Department of Corrections. In all other respects, the judgment is affirmed.

Huffman, Acting P. J., and Nares, J., concurred.

---

receive a life sentence of at least twenty-five years. (Ballot Pamp. analysis of Prop. 184 by Legislative Analyst, Gen. Elec. (Nov. 8, 1994) p. 34.) The voters approved the proposition by a margin of 72 percent to 28 percent. (Statement of Vote, Gen. Elec. (Nov. 8, 1994) p. ix.)