[No. D038813. Fourth Dist., Div. One. May 10, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
RODOLFO TORRES MANTANEZ, Defendant and Appellant.

**[Opinion certified for partial publication.¹]**

¹Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and II.

**COUNSEL**

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster and Janelle Boustany, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HUFFMAN, Acting P. J.**—Following convictions for possession of heroin and receiving stolen property, with true findings as to four "strike" prior convictions and a subsequent life sentence under the "Three Strikes" law (Pen. Code,[2] § 667, subds. (b)-(i)), Rodolfo Torres Mantanez appeals. Mantanez argues the evidence does not support his conviction for receiving stolen property, his suppression motion was erroneously denied, and also, relying on recent cases decided by the United States Court of Appeals for the Ninth Circuit, Mantanez argues his sentence is cruel and unusual in light of the relatively minor nature of the present offenses of which he was convicted.

For the reasons which follow, we reject the challenges to the sufficiency of and admission of the evidence. Also, as we believe the Ninth Circuit cases noted above were not correctly decided, we decline to follow them, and we affirm the judgment and sentence imposed on Mantanez herein.

FACTUAL BACKGROUND

On September 21, 2000, in Carlsbad, the Oak Street home of Mariana Ramirez was burglarized and some of her jewelry was taken. On the evening of October 4, 2000, Carlsbad Police Officer George Hart, patrolling Chestnut Street, not far from Oak Street, saw Mantanez. Hart, who knew Mantanez and had often spoken with him, decided to contact Mantanez, who had always been cooperative in the past.

---

[2]Subsequent unattributed citations are to this code.

The two exchanged greetings. Officer Hart noted that Mantanez appeared to be under the influence of both heroin and a stimulant. Hart did a radio check for warrants, and also took Mantanez's pulse. At this point Hart determined Mantanez was indeed under the influence of drugs and determined to arrest him.

Hart called for backup, and Officer Philip Cable arrived. Mantanez was searched following his arrest. A syringe and .25 grams of tar heroin were found on his person. Mantanez also had several items of women's jewelry in his possession. Officer Cable noted that a ring Mantanez had matched the description of an item taken in the Ramirez burglary two weeks earlier. Mrs. Ramirez identified other items Mantanez had (but not all of them) as having been taken from her home in the burglary. A blood test revealed Mantanez had ingested heroin and amphetamine.

### PROCEDURAL BACKGROUND

By amended information filed March 26, 2001, the District Attorney of San Diego County accused Mantanez of one count of possessing heroin in violation of Health and Safety Code section 11350, subdivision (a), and in a second count of receiving stolen property in violation of section 496, subdivision (a). It was further alleged Mantanez had incurred six prison prior convictions within the meaning of section 667.5, subdivision (b). It was further alleged that three of those prison priors were strike prior convictions within the meaning of the Three Strikes law.

A motion to suppress evidence brought pursuant to section 1538.5 was heard and denied in the superior court on June 1, 2001. On June 21, 2001, a jury found Mantanez guilty of heroin possession and receiving stolen property, and in a court trial the prior conviction allegations were all found to be true.

On September 14, 2001, Mantanez was sentenced. The court stated that "if this case involved drugs only," in the case of a multidecade narcotics addict, he might be inclined to strike one or more of the strike prior convictions, but the current conviction for receiving stolen property also, considered with Mantanez's long history of burglary and narcotics offenses, militated against such an exercise of discretion. The court imposed a 25-year-to-life sentence for the receiving count, a concurrent like term for the drug possession, and three 1-year prison prior enhancements.

DISCUSSION

I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . .

III

CRUEL AND UNUSUAL PUNISHMENT

A. *Question Presented*

 Mantanez also asserts that, in light of the relatively minor nature of his current offenses, the Three Strikes 25-year-to-life sentence he received constitutes cruel and unusual punishment under the United States and California Constitutions. On federal constitutional questions, of course, the decisions of the Supreme Court of the United States control, while the decisions of lower federal courts are "persuasive but not controlling." (*People v. Camacho* (2000) 23 Cal.4th 824, 837 [98 Cal.Rptr.2d 232, 3 P.3d 878].)

B. *Standard of Review*

 "Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be viewed in the light most favorable to the judgment. [Citations.]" (*People v. Martinez* (1999) 76 Cal.App.4th 489, 496 [90 Cal.Rptr.2d 517].) Cruel and unusual punishment is prohibited by the Eighth Amendment to the United States Constitution[6] and article I, section 17 of the California Constitution.[7] Punishment is cruel and unusual if it is so disproportionate to the crime committed that it shocks the conscience and offends fundamental notions of human dignity. (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].)

---

*See footnote 1, *ante*, page 354.

[6]The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." This prohibition is applicable to the states by virtue of its incorporation in the due process clause of the Fourteenth Amendment. (*Robinson v. California* (1962) 370 U.S. 660, 675 [82 S.Ct. 1417, 1424-1425, 8 L.Ed.2d 758] (conc. opn. of Douglas, J.).)

[7]While the federal proscription concerns "cruel *and* unusual" punishments, article I, section 17 of the California Constitution states in pertinent part that "[c]ruel *or* unusual punishment may not be inflicted." No distinction need be attached this difference from an analytic perspective, however.

## C. *Analysis*

### 1. *In re Lynch*

In *In re Lynch, supra*, 8 Cal.3d 410, the California Supreme Court formulated a three-point analysis for the determination whether a sentence is cruel and unusual: (1) the nature of the offense and the offender, with particular regard to the degree of danger which both present to society; (2) a comparison of the challenged penalty with the punishment prescribed in the same jurisdiction for other more serious offenses; and (3) a comparison of the challenged penalty with the punishment prescribed for the same offense in other jurisdictions. (*Id.* at pp. 425-427.) It is not cruel and unusual punishment to enhance the penalty for a crime because the defendant is a recidivist (*People v. Jameson* (1986) 177 Cal.App.3d 658, 661-662 [223 Cal.Rptr. 108]) as long as the ultimate punishment, all facts considered, is not disproportionate to the crime. (*Solem v. Helm* (1983) 463 U.S. 277, 284-288 [103 S.Ct. 3001, 3006-3009, 77 L.Ed.2d 637] (*Solem*); *Harmelin v. Michigan* (1991) 501 U.S. 957, 997 [111 S.Ct. 2680, 2702-2703, 115 L.Ed.2d 836] (conc. opn. of Kennedy, J.) (*Harmelin*).)

 While arguing his sentence is disproportionate to the crime, Mantanez relies on *Solem, supra*, 463 U.S. 277, which held it cruel and unusual punishment to imprison a nonviolent recidivist to a life term without the possibility of parole. However, when discussing the proportionality of a sentence, the Supreme Court in *Solem* set forth as guidelines the same factors as expressed in *In re Lynch, supra*, 8 Cal.3d 410. Thus, *Solem* adds no additional analysis to *Lynch*.

When faced with recidivist defendants such as Mantanez, California appellate courts have consistently found the Three Strikes law is not cruel and unusual punishment. (See, e.g., *People v. Cooper* (1996) 43 Cal.App.4th 815, 826-827 [51 Cal.Rptr.2d 106]; *People v. Ingram* (1995) 40 Cal.App.4th 1397, 1413 [48 Cal.Rptr.2d 256].) The only authority cited by Mantanez supporting his present claim of error are a pair of decisions of the Ninth Circuit Court of Appeals, which, for reasons set out later, we decline to follow.

### 2. *Rummel, Solem and Harmelin*

Three decisions of the United States Supreme Court inform our analysis. In 1980, the court reviewed the following question: does a life sentence under a recidivist statute for a third felony theft offense constitute cruel and

unusual punishment under the Eighth Amendment?[8] (*Rummel, supra,* 445 U.S. at pp. 270-271 [100 S.Ct. at pp. 1136-1138].) Observing at the beginning of their analysis that "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare," (*id.* at p. 272 [100 S.Ct. at p. 1738]), five justices answered the question in the negative.

The *Rummel* majority rejected Rummel's arguments that the Texas penalty was one of the three most severe in the nation, finding little relevance in the point, and noting also the obvious fact that some state penalty must always be the most severe does not mean that penalty is necessarily disproportionate. The fact of recidivism is, of course, central to the holding of *Rummel*,[9] and it is precisely such recidivism which created the particular circumstances in which Mantanez today faces a sentence he asserts is cruel and unusual.

Three years later, in another five-to-four decision,[10] the court considered "whether the Eighth Amendment proscribes a life sentence without possibility of parole for a seventh nonviolent felony." (*Solem, supra,* 463 U.S. at p. 279 [103 S.Ct. at p. 3004].) According to the *Solem* majority, the Eighth Amendment proscribes not only punishments which are "barbaric," but also "sentences that are disproportionate to the crime committed." (*Id.* at p. 284 [103 S.Ct. at p. 3006].) The *Solem* majority went on to hold that "a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."[11] (*Id.* at p. 292 [103 S.Ct. at p. 3011].)

---

[8]The first theft was fraudulent use of a credit card to obtain $80 in goods or services, the second was a forged check for $28.36, and the third offense was the obtaining of $120.75 by false pretenses. (*Rummel v. Estelle* (1980) 445 U.S. 263, 265-266 [100 S.Ct. 1133, 1134-1135, 63 L.Ed.2d 382] (*Rummel*).)

[9]"If nothing else, the three-time offender's conduct supports inferences about his ability to conform with social norms that are quite different from possible inferences about first- or second-time offenders." (*Rummel, supra,* 445 U.S. at pp. 282-283, fn. 27 [100 S.Ct. at pp. 1143-1144].)

[10]Justice Powell, who had written the dissent in *Rummel* and was there joined by Justices Brennan, Marshall and Stevens, wrote the majority opinion in *Solem,* joined by the three dissenters from *Rummel* and Justice Blackmun, who had voted with the majority in *Rummel.*

[11]One may question precisely what "objective criteria" demonstrate that life for a third minimal theft was constitutional, but life for a seventh felony was not. Some might argue it is only the change of Justice Blackmun's opinion in the matter (see fn. 10, *ante*), rather than any "objective criteria" apparent, which resulted in the different holdings. Certainly the Chief Justice, writing for the dissent in *Solem,* was of that view that decision "cannot rationally be reconciled with *Rummel*," (*Solem, supra,* 463 U.S. at p. 304 [103 S.Ct. at p. 3017] (dis. opn. of Burger, C. J.).) and thus the question has been reduced to the point where "a sentence is unconstitutional if it is more severe than five Justices think appropriate." (*Id.* at p. 305 [103

Applying the "objective" criteria, the *Solem* majority distinguished the life sentence in *Rummel* by noting Rummel was eligible for parole in 12 years, while Helm's sentence was without possibility of parole, and was thus (in a state without capital punishment at the time) "the most severe punishment that the State could have imposed on any criminal for any crime." (*Solem, supra,* 463 U.S. at p. 297 [103 S.Ct. at p. 3013].)

Thus, the *Solem* majority held, "[a]pplying objective criteria, we find that Helm has received the penultimate sentence for relatively minor criminal conduct. He has been treated more harshly than other criminals in the State who have committed more serious crimes. He has been treated more harshly than he would have been in any other jurisdiction, with the possible exception of a single State. We conclude that his sentence is significantly disproportionate to his crime, and is therefore prohibited by the Eighth Amendment." (*Solem, supra,* 463 U.S. at p. 303 [103 S.Ct. at pp. 3016-3017].)

The *Solem* majority (the former *Rummel* minority) insisted that *Solem* did not overrule *Rummel,* but was distinguishable because the life without possibility of parole sentence in *Solem* was "far more severe than the life sentence we considered in *Rummel.*" (*Solem, supra,* 463 U.S. at p. 297 [103 S.Ct. at p. 3013].) The dissent in *Solem,* however, asserted that *Rummel* had instead "categorically rejected the very analysis adopted" (*id.* at p. 308 [103 S.Ct. at p. 3019] (dis. opn. of Burger, C. J.).) by the *Solem* majority, and argued that stare decisis and "a decent regard for the orderly development of the law and the administration of justice requires that directly controlling cases be either followed or candidly overruled." (*Id.* at p. 312 [103 S.Ct. at p. 3021].)[12] The dissent also predicted that "[b]y asserting the power to review sentences of imprisonment for excessiveness the Court launches into uncharted and unchartable waters." (*Id.* at p. 314 [103 S.Ct. at p. 3022].) In the event, quite so.

S.Ct. at p. 3017].) The result in *Solem* may indeed have been occasioned by the majority's footnoted view that "Helm, who was 36 years old when he was sentenced, is not a professional criminal. The record indicates an addiction to alcohol, and a consequent difficulty in holding a job. His record involves no instance of violence of any kind. Incarcerating him for life without possibility of parole is unlikely to advance the goals of our criminal justice system in any substantial way." (*Id.* at p. 297, fn. 22 [103 S.Ct. at p. 3013].)

[12]The fundamental incompatibility between *Rummel* and *Solem* is well illustrated by the following cite from *Rummel*: "[O]ne could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of the sentence actually imposed is purely a matter of legislative prerogative." (*Rummel, supra,* 445 U.S. at p. 274 [100 S.Ct. at p. 1139].) The *Solem* court dismissed this observation as relating to a mere "possible" argument, and further find it to be in any event "meritless." (*Solem, supra,* 463 U.S. at pp. 288-289, fn. 14 [103 S.Ct. at p. 3009].)

Such a casual rejection by the *Solem* court of what appeared to be a central tenet of the *Rummel* analysis appears far more consistent with a view that *Solem,* despite the majority's averments to the contrary, indeed overruled *Rummel* de facto, if not de jure.

The accuracy of the last-cited prediction was validated eight years after *Solem*, when the court again visited the Eighth Amendment, in *Harmelin, supra*, 501 U.S. 957. *Harmelin* involved not a recidivist statute, but a life without parole sentence for the first offense of possessing 672 grams of cocaine. (*Id.* at p. 961 [111 S.Ct. at p. 2684].) *Harmelin* produced no majority opinion, although five justices agreed the mandatory life without possibility of parole sentence did not violate the Eighth Amendment.

Two justices (Scalia, joined by Rehnquist) in *Harmelin* presented an historical analysis of the Eighth Amendment, which returned to the *Rummel* principle[13] that the actual length of felony sentences " 'is purely a matter of legislative prerogative' " and went on to argue that *Solem*, with its " 'general principle of proportionality' " and three-factor test was "simply wrong" and because there is no proportionality guarantee, *Solem* should be overruled. (*Harmelin, supra*, 501 U.S. at pp. 962-965 [111 S.Ct. at pp. 2684-2686].) Four dissenting justices, again arguing from history, would have simply applied the *Solem* three-factor test to the case before them and found Harmelin's sentence did indeed violate the Eighth Amendment. (*Id.* at p. 1027 [111 S.Ct. at pp. 2718-2719] (dis. opn. of White, J. [joined by Justices Blackmun and Stevens, with Justice Marshall agreeing also, while reiterating his view that the death penalty is always such a violation]).)

Justice Kennedy, writing for himself and Justices O'Connor and Souter, steered a middle course between the two views set out above, arguing that "[r]egardless of whether JUSTICE SCALIA or JUSTICE WHITE has the best of the historical argument . . . *stare decisis* counsels our adherence to the narrow proportionality principle that has existed in our Eighth Amendment jurisprudence for 80 years." (*Harmelin, supra*, 501 U.S. at p. 996 [111 S.Ct. at p. 2702] (conc. opn. of Kennedy, J.).) Concluding that the initial question is simply whether a sentence "is grossly disproportionate to a crime" (*id.* at p. 1005 [111 S.Ct. at p. 2707]), and that only after that threshold is met is comparative analysis proper (*ibid.*), the three concurring justices identified "some common principles that give content to the uses and limits of proportionality review." (*Id.* at p. 998 [111 S.Ct. at p. 2703].)

The "common principles" are four. First, setting prison terms for specific crimes involves substantive penological judgments within the province of legislatures rather than courts, and courts must give substantial deference to the broad authority legislatures have in setting punishment for crimes. (*Harmelin, supra*, 501 U.S. at p. 998 [111 S.Ct. at p. 2703] (conc. opn. of Kennedy, J.).) Next, the Eighth Amendment does not compel any particular penological theory, and different criminal justice systems may give different

---

[13]See footnote 12, *ante*.

weight at different times to the goals of retribution, deterrence, incapacitation and rehabilitation. (*Id.* at p. 999 [111 S.Ct. at pp. 2703-2704].) Third, "marked divergences" in sentencing and length of prison terms are an inevitable and often beneficial result of a federal structure; that a state has the most severe punishment for a particular crime does not alone render it grossly disproportionate. (*Id.* at p. 1000 [111 S.Ct. at pp. 2704-2705].) Fourth, proportionality review should be by objective factors to the greatest extent possible, but courts lack "clear objective standards to distinguish between sentences for different terms of years." (*Id.* at p. 1001 [111 S.Ct. at p. 2704].)

While *Solem* held "no single criterion can identify when a sentence is so grossly disproportionate that it violates the Eighth Amendment" (*Solem, supra,* 463 U.S. at p. 291, fn. 17 [103 S.Ct. at p. 3010]), *Harmelin* added that "[o]n the other hand, one factor may be sufficient to determine the constitutionality of a particular sentence." (*Harmelin, supra,* 501 U.S. at p. 1004 [111 S.Ct. at p. 2707] (conc. opn. of Kennedy, J.) In *Harmelin's* case, according to the concurring justices, the gravity of his crime alone was such that "a comparison of his crime with his sentence does not give rise to an inference of gross disproportionality, and comparative analysis of his sentence . . . need not be performed." (*Id.* at p. 1005 [111 S.Ct. at p. 2707].)

### 3. *Andrade and Brown*

In *Andrade v. Attorney General of State of California* (9th Cir. 2001) 270 F.3d 743 (*Andrade*)[14] and *Brown v. Mayle* (9th Cir. 2002) 283 F.3d 1019 (*Brown*), the Ninth Circuit Court of Appeals found life terms cruel and unusual punishment when imposed on defendants convicted of petty theft with a prior theft conviction, having also been previously convicted of serious or violent felonies. (The facts in both the *Andrade* and *Brown* cases are distinguishable from the facts here, in that the defendants in *Andrade* and *Brown* were convicted of petty theft only while Mantanez was convicted in the present case of felony receiving stolen property as well as felony possession of heroin.)

With all due respect to our federal counterparts, in light of *Rummel, supra,* 445 U.S. 263[15] and *Harmelin, supra,* 501 U.S. 957, we are not persuaded that it is cruel and unusual punishment to impose a possible life term on a

---

[14]The United States Supreme Court granted certiorari in *Andrade, supra,* 270 F.3d 743 and a companion case, *Ewing v. California* (2002) __ U.S. __ [122 S.Ct. 1435, 152 L.Ed.2d 379].)

[15]*Andrade, supra,* 270 F.3d at page 767, footnote 24, criticizes the frequent reliance by California courts on *Rummel,* and it is correct to observe such reliance is normative: "California appellate courts have adopted the reasoning of *Rummell* v. *Estelle*[, *supra*] 445 U.S. 263 in upholding life sentences for third strike offenders. (*People* v. *Ingram* (1995) 40

conviction of a nonviolent felony committed by a defendant with a history of serious or violent felony convictions. In both *Andrade* and *Brown*, the court found the punishment cruel and unusual after determining there was an inference the sentence was "grossly disproportionate" because the defendant was likely to spend the rest of his life in prison for shoplifting. (*Andrade, supra,* 270 F.3d at p. 761.)

In *Andrade*, the appeals court recognized it should accord substantial deference to the legislative determinations of appropriate punishments, and as divergences in theories of sentencing and length of prison terms are inevitable in a federal system, proportionality reviews should be informed by objective factors. (*Andrade, supra,* 270 F.3d at p. 757.) The *Andrade* court then subjectively determined that a life term was grossly disproportionate when imposed on a recidivist defendant convicted of petty theft with a prior theft conviction. (*Id.* at p. 761.) In doing so, the court overlooked the limitation on the court's role in the criminal process that it discussed earlier. In *Brown, supra,* 283 F.3d 1019, the reviewing court merely adopted the initial "gross disproportionality" conclusion and subsequent confirming analysis arrived at in *Andrade*.

Because we must defer to the Legislature and the people of California (enacting the Three Strikes law through an initiative),[16] in adoption of a penological theory and in determination of the length of sentences, we cannot say when applying objective factors the term of 25 years to life

---

Cal.App.4th 1397, 1415 [48 Cal.Rptr.2d 256] [Fifth District], disapproved on another ground by *People v. Dotson* (1997) 16 Cal.4th 547, 560, fn. 8 [66 Cal.Rptr.2d 423, 941 P.2d 56]; *People v. Kinsey* (1995) 40 Cal.App.4th 1621, 1630-1631 [47 Cal.Rptr.2d 769] [Second District, Division Seven]; *People v. Ayon* (1996) 46 Cal.App.4th 385, 399 [53 Cal.Rptr.2d 853] [Fourth District, Division One], disapproved on another ground by *People v. Deloza* (1998) 18 Cal.4th 585, 600, fn. 10 [76 Cal.Rptr.2d 255, 957 P.2d 945].) In *Rummell,* the United States Supreme Court upheld a life sentence for a repeat offender after a felony conviction of receiving $121 by false pretenses, with one prior felony conviction for credit card fraud worth $80 and another prior felony conviction for forging a $28 check. [Citation.] The court reasoned that society is warranted in imposing increasingly severe penalties on those who repeatedly commit felonies. If increased penalties do not deter the repeat offender, then society is warranted in segregating that person for an extended period of time. [Citation.]" (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511-1512 [84 Cal.Rptr.2d 638].)

[16]"[I]t may be inferred from the passage of Proposition 184 that considerably more than two-thirds of California voters do not consider it cruel or unusual punishment for a recidivist offender convicted of a serious felony with prior convictions for violent or serious felonies to receive a 25-year-or-more-to-life sentence. [¶] In light of [appellant]'s current offenses and extensive continued criminal conduct, we cannot say imposition of the functional equivalent of a life without possibility of parole sentence under the three strikes law either shocks the conscience or violates notions of human dignity. Rather, application of this law to [appellant] results from the need to deter offenders, like him, who repeatedly commit such crimes and to segregate them from the rest of society. This does not constitute cruel or unusual punishment." (*People v. Ayon, supra,* 46 Cal.App.4th 385, 400-401, fn. omitted.)

imposed on Mantanez is cruel and unusual punishment. The vice of the *Andrade/Brown* rationale, that California's punishment is the most or one of the most severe in the country supports an initial inference of "gross disproportionality," is clear: for every offense, there necessarily is one or more of the states which punishes said offense most harshly. Under the *Andrade/Brown* rationale, federalism only extends to those within the extremes, and the extremes are automatically suspect.[17]

Further, the *Andrade* analysis sounds truly only in a view of the present offense, unrelated to a history of serious felonies such as Andrade's burglaries,[18] which vitiates the importance of punishing recidivism as a proper public goal. We think this rationale insufficient, and contrary to controlling United States Supreme Court jurisprudence.[19]

A further vice peculiar to *Brown* is the disregard of violence in earlier offenses as relevant to the question of whether the currently imposed punishment is or is not grossly disproportionate. Thus, while purporting to follow *Harmelin*, *Rummel* and *Solem*, the *Brown* court departed completely from the unique facts of *Solem* (where Helm was a person viewed by five justices as a drunk, rather than a criminal, without any background of violence, and thus one whose incarceration served no valid penological purpose under any theory)[20] to extend precisely the same relief to a hardened criminal with a great deal of violence in his background. ■ Cases are not authority for propositions not properly before them, and the application of the Eighth Amendment in cases such as Brown's does not "clearly" emerge from a consideration of *Solem* in the abstract, and seems far less clear when *Solem* is considered together with *Rummel* and *Harmelin*, proclaimed by the *Brown* court as "good law" and then ignored in the analysis.

[17]The *Andrade* majority asserted that "we follow the test prescribed by Justice Kennedy in *Harmelin*, [and] both *Rummel* and *Solem* remain good law and are instructive in *Harmelin*'s application." (*Andrade, supra,* 270 F.3d at p. 766.) Insofar as enhanced punishments for recidivists such as Andrade are concerned, neither *Rummel* nor *Harmelin* appears to be of any weight at all in the *Andrade* court's analysis. Indeed, the asserted basis for finding state court rulings denying relief to be erroneous was that the state court rulings were done in "disregard for *Solem* [which] results in an unreasonable application of clearly established [United States] Supreme Court law." (*Andrade, supra,* 270 F.3d at p. 766.)

[18]In the present case, for instance, the total dollar amount of the items taken by Mantanez in his various burglaries may not be great, but the damage and violation incurred by the many victims of Mantanez's felonious activities over the years is a great matter to them, as the trial judge noted in this case.

[19]The question unanswered by *Andrade* and *Brown* is just what length of sentence might have passed constitutional muster. "It is clear that a 25-year sentence generally is more severe than a 15-year sentence, but in most cases it would be difficult to decide that the former violates the Eighth Amendment while the latter does not." (*Solem, supra,* 469 U.S. at p. 294 [103 S.Ct. at p. 3012], fn. omitted.)

[20]See footnote 11, *ante.*

It is precisely because of Mantanez's past conduct, which has included forcible entries into homes where residents are present, numerous narcotics offenses, and long-term refusal to take any steps whatsoever to overcome his addiction despite several opportunities, that the trial judge determined Mantanez was indeed, in light of his continued participation in not only addictive but larcenous acts, wholly within, rather than without, the category of persons intended to be incarcerated for long terms under the Three Strikes legislation.

This punishment imposed in this case presents no "exquisite rarity." Further, Mantanez's argument rests upon a fundamentally false premise, which another court has well discussed: "Appellant contends his sentence of 25 years to life constitutes cruel or unusual (or both) punishment under the federal and state Constitutions. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.) We find no constitutional infirmity. [¶] The basic fallacy of appellant's argument lies in his failure to acknowledge that he 'is not subject to a life sentence merely on the basis of his current offense but on the basis of his recidivist behavior. Recidivism in the commission of multiple felonies poses a manifest danger to society[,] justifying the imposition of longer sentences for subsequent offenses. [Citations.]' [Citation.]" (*People v. Stone* (1999) 75 Cal.App.4th 707, 715 [89 Cal.Rptr.2d 401].)

In this case the trial court based its decision in large part on Mantanez's extensive criminal history. As of the time of the sentencing, Mantanez had accumulated numerous criminal convictions arising from a criminal career spanning 17 years. The probation report reflects at least 10 felony convictions and four separate prison terms before he committed his current felony offense. During his lengthy criminal history, Mantanez's grants of probation or parole were repeatedly violated. In short, the record demonstrates nearly four decades of criminal conduct, undeterred by repeated incarcerations and imprisonments. As such, it is clear that the sentence imposed was based not only on the nature of the current felony, but also on persistent recidivism demonstrated by this record.

As the sentencing judge observed, the long criminal career of Mantanez properly brought him squarely within the Three Strikes ambit. If the statutorily prescribed penalty for recidivism cannot be applied to Mantanez, then there can hardly exist any case where its imposition would be proper, so long as any judicial officer were of the opinion it were improper. Such is not, should not be and cannot be the law.

In these circumstances, whenever a putatively disproportionately harsh sentence is specified under the Three Strikes law, it is subject to judicial

modification at sentencing if the sentencing court deems it appropriate. (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].) This safety valve suffices for constitutional purposes; no greater and more informed wisdom concerning an offender's culpability is, as a matter of course, available to a reviewing court. According deference to the *Harmelin* principles, California's recidivist legislation is not violative of the Eighth Amendment to the United States Constitution.

As Justice Stewart observed in *Rummel*, repeating an earlier observation about recidivist legislation in Texas: " 'If the Constitution gave me a roving commission to impose upon the criminal courts of Texas my own notions of enlightened policy, I would not join the Court's opinion. . . . But the question for decision is not whether we applaud or even whether we personally approve the procedures followed in [this case]. The question is whether those procedures fall below the minimum level the [Constitution] will tolerate. Upon that question I am constrained to join the opinion and judgment of the Court [affirming a conviction].' (*Spencer* v. *Texas* [(1967)] 385 U.S. 554, 569 [87 S.Ct. 648, 656, 17 L.Ed.2d 606] (concurring opinion.)" (*Rummel, supra,* 445 U.S. 263, 285 [100 S. Ct. 1133, 1145] (conc. opn. of Stewart J.).)

The sentence imposed in this case was arrived at by procedures which do not fall "below the minimum level the Constitution will tolerate," and we thus reject Mantanez's assertions to the contrary.

DISPOSITION

The judgment is affirmed.

McConnell, J., concurred.

**McINTYRE, J.,** Concurring.—I agree with the reasoning and conclusions of the majority as to the sufficiency of the evidence and the legality of the initial police contact with defendant. I also agree that the sentence imposed here does not violate the constitutional prohibition against cruel and unusual punishment. However, as I believe the extensive discussion of federal case law is unnecessary, I concur in the result only.

The trial court here concluded defendant's lengthy criminal history brought him within the spirit of the three strikes law. As the majority admits, the trial court's decision may be affirmed using the analysis expressed in *Solem v. Helm* (1983) 463 U.S. 277 [103 S.Ct. 3001, 77 L.Ed.2d 637] and *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], which

includes a consideration of defendant's recidivist background. I believe this analysis is sufficient to affirm the judgment. Therefore, I believe the majority's extended exposition of the interplay of the United States Supreme Court decisions in *Rummel v. Estelle* (1980) 445 U.S. 263 [100 S.Ct. 1133, 63 L.Ed.2d 382], *Solem v. Helm, supra,* 463 U.S. at pages 284-288 [103 S.Ct. at pages 3006-3009] and *Harmelin v. Michigan* (1991) 501 U.S. 957, 997 [111 S.Ct. 2680, 2702-2703, 115 L.Ed.2d 836] and the criticism of the two Ninth Circuit Court of Appeals cases *Andrade v. Attorney General of the State of California* (9th Cir. 2001) 270 F.3d 743 and *Brown v. Mayle* (9th Cir. 2002) 283 F.3d 1019 are unnecessary to the disposition here.

As the majority concedes, both *Andrade* and *Brown* are distinguishable from our case in that the current crime involved there, petty theft, is ordinarily punished as a misdemeanor but is elevated to felony status only by reason of a prior theft conviction. In my view, this factual distinction makes the holdings of these cases inapplicable here. Further, although some of the language in *Andrade* and *Brown* suggests the Ninth Circuit may be inclined to invalidate some three strikes sentences where the current crime is not simply a misdemeanor elevated to felony status by prior conduct, it has not yet done so. Finally, the majority analysis is unnecessary in light of the fact that the Supreme Court has granted certiorari in *Andrade*.

Appellant's petition for review by the Supreme Court was denied July 17, 2002. Brown, J., did not participate therein.