Filed 3/27/13  P. v. Nelson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TYKEEM NELSON,<br><br>    Defendant and Appellant. | D061202<br><br><br>(Super. Ct. No. SCD228079) |

APPEAL from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed.

A jury convicted Tykeem Nelson of five counts of robbery (Pen. Code, § 211[1]) and one count of attempted robbery (§§ 211, 664).  After waiving his right to a jury trial, Nelson admitted special allegations of a serious felony conviction within the meaning of section 667, subdivision (a) and two strike priors within the meaning of section 667, subdivisions (b) through (i).  Defense counsel brought a motion under *People v. Superior*

---

[1]    All statutory references are to the Penal Code.

*Court* (1996) 13 Cal.4th 497 (*Romero*) and section 1385 to strike the strike prior conviction allegations. The court denied the *Romero* motion and sentenced Nelson to six consecutive prison terms of 25 years to life, plus six consecutive five-year terms under section 667, subdivision (a), for a total term of 180 years to life. Nelson asserts the sentence is cruel and unusual and the trial court erred by failing to strike one or more of his prior strike convictions. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On May 26, 2010, Nelson entered the Adult World Bookstore. After viewing movies and using the store's restroom, he approached one of two female employees on duty, grabbed her by the neck and ordered the other female employee to open the cash register and give him all the money inside. The second woman followed Nelson's instructions, giving him a few hundred dollars. Once he had the money Nelson released the woman he held by the neck and left the store.

Two days later, Nelson embarked on a series of five bank robberies throughout San Diego County. Each bank robbery was similar in its execution, with Nelson handing a teller a note demanding money. In four of the five robberies, he took between $2,300 and $6,700. In the other robbery, Nelson was thwarted when the teller refused to give him money and he eventually fled the scene. Nelson's spree of robberies ended on June 21, 2010 when police arrested him after receiving information about the location of a car registered in his name that had been identified by a witness at one of the bank robberies.

After a three-day jury trial, Nelson was convicted of five counts of robbery and one count of attempted robbery. Nelson admitted and waived his right to trial on

2

allegations of a serious felony conviction (667, subd. (a)) and two prior strike convictions (667, subds. (b)-(i)) under the Three Strikes law. The court made true findings as to these allegations. Nelson's trial also included charges of kidnapping to commit rape, assault with intent to commit rape, attempted forcible rape, and two additional charges of robbery. These charges stemmed from two earlier instances at other retail stores and were described by the victims at trial as somewhat similar in execution to the Adult World Bookstore robbery. The jury deadlocked with respect to these charges, which were then dismissed by the court.

At the sentencing hearing, the court considered and denied Nelson's *Romero* motion, refusing to dismiss his strike prior convictions. The court based its denial on the violent and predatory nature of Nelson's crimes, Nelson's failure to reform after receiving leniency from the court on prior offenses, and the lack of time between Nelson's release from custody and his commission of very similar crimes for which he had been incarcerated. The court called specific attention to Nelson's recidivism and the brief duration between the time he was released from custody and the commission of his next crime. The strike offenses occurred in April, 2009, just two months after Nelson was released from the California Youth Authority after serving three years for armed robbery involving a gun. Nelson pleaded guilty to the strike offenses, but served just one year in custody before being released on probation. Once on probation, and again within just months of his release, Nelson began the string of robberies that resulted in the present conviction and sentence.

DISCUSSION

I

Nelson contends his sentence, which equates to life in prison, constitutes cruel and unusual punishment in violation of the United States and California Constitutions. Nelson argues the enhancements to his sentence constitute punishment for his prior offenses and, as a result, his sentence is disproportionate to the crimes for which he was actually convicted. He also contends the sentence was disproportionate in comparison to sentences for other comparable crimes. Finally, Nelson argues his age at the time the principal and strike prior crimes were committed precludes the imposition of a de facto life sentence.

A

To determine whether punishment is cruel and unusual under the Eighth Amendment, the court examines whether the punishment is grossly disproportionate to the crime, considering all of the circumstances of the case beginning with the gravity of the offense and the severity of the sentence. (*Graham v. Florida* (2010) 560 U.S. ___ [130 S.Ct. 2011, 2021–2022].) Where this threshold comparison raises an inference of "gross disproportionality," the court compares the defendant's sentence with those received by others in both the same state and other states. (*Id*. at p. 2022.) " '[I]t is only in the rare case where a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality that the second and third criteria come into play.' [Citations]." (*People v. Haller* (2009) 174 Cal.App.4th 1080, 1088.) If the comparative analysis confirms the initial inference the sentence is grossly

4

disproportionate, then it is cruel and unusual. (*Graham v. Florida, supra*, 130 S. Ct. at p. 2022.)

Under the California Constitution, a sentence is cruel or unusual if it is so disproportionate to the crime committed that it shocks the conscience and offends fundamental notions of human dignity. (*In re Lynch* (1972) 8 Cal.3d 410, 424.) Our review under this test includes an examination of the nature of the crime and the character of the defendant, and comparisons of the penalties in this state for more serious crimes and those imposed in other states for the same crime. (*Id.* at pp. 425-426; *People v. Haller, supra*, 174 Cal.App.4th at p. 1092.) With respect to our examination of the nature of the crime and character of the defendant, we pay particular regard to the degree of danger these factors present to society. (*People v. Haller, supra*, 174 Cal.App.4th at p. 1092.) The " 'inquiry focuses on the particular person before the court, and asks whether the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind.' " (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 570.)

Further, under the Three Strikes law, a defendant's prior convictions are relevant to the court's sentencing decision. "When the California Legislature enacted the three strikes law, it made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime." (*Ewing v. California* (2003) 538 U.S. 11, 25.) "Nothing in the Eighth Amendment prohibits California from making that choice." (*Ibid.*) In weighing the gravity of a defendant's offense, the court must consider not only his current felonies, but also his

5

history of felony recidivism. "Any other approach would fail to accord proper deference to the policy judgments that find expression in the legislature's choice of sanctions. In imposing a three strikes sentence, the State's interest is not merely punishing the offense of conviction, or the 'triggering' offense: '[I]t is in addition the interest . . . in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.' [Citation.]" (*Id*. at p. 29.)

B

Although the sentence Nelson received was undoubtedly harsh, it is not grossly disproportionate to the crimes committed nor does it shock the conscience to the point of offending fundamental notions of human dignity. Nelson committed a string of six robberies, all serious felonies, one involving actual physical violence against his victim. Further, this crime spree began within months of Nelson's release from custody to probation for a strikingly similar robbery, also involving physical violence. That crime in turn was committed within months of Nelson's release from the California Youth Authority after he served a sentence for armed robbery. In addition, Nelson's punishment was not for a single crime, but a string of crimes that ended only with his arrest. The lengthy sentence imposed by the court was not out of proportion to the "commission of multiple, serious robbery offenses by a recidivist offender." (*People v. Sullivan, supra*, 151 Cal.App.4th at p. 572.)

*In re Wells* (1975) 46 Cal.App.3d 592, which Nelson relies on to contend he is being punished for prior crimes, does not suggest disproportionality here. The court in

6

*Wells* held the life sentence prescribed by section 647a (annoying or molesting children under 18 years of age) for a defendant previously convicted of the more serious crime of committing lewd and lascivious acts on a child under 14 years of age (§ 288) was unconstitutional. (*Id.* at p. 604.) Fundamental to this holding was the fact that a violation of section 647a without a prior conviction under section 288 carried a maximum penalty of no more than six months in jail and a $500 fine. (*Id.* at pp. 600-601.) The court held the life sentence imposed on the defendant pursuant to the recidivism provision of section 647a was disproportionate because it amounted to a penalty for the prior violation of section 288, not the less serious offense on trial. (*Id.* at p. 601.) Here, no such lack of proportionality is present. Nelson's current offenses are equally, if not more, serious than his prior strike offenses.

Nelson also argues the sentence is disproportionate compared to punishment for more serious crimes, stating his sentence exceeds what he "could have received for six premeditated and deliberate first-degree murders in California." This argument is flawed. First, the maximum punishment for first degree murder, death, is greater than the sentence Nelson received. (*People v. Sullivan, supra*, 151 Cal.App.4th at p. 571.) Second, Nelson is "not subject to multiple 25-year-to-life sentences merely on the basis of his current offenses alone, but also for his recidivist behavior." (*Ibid.*) " 'Because the Legislature may constitutionally enact statutes imposing more severe punishment for habitual criminals,' we cannot logically compare [Nelson's] 'punishment for his [current offenses,] which includes his recidivist behavior, to the punishment of others who have committed more serious crimes, but have not qualified as repeat felons. . . .' [Citation.]

7

'[I]t is proper to punish a repeat offender more severely than a first-time offender.  The proper comparison would be to a recidivist killer,' whose punishment would not be less severe than defendant's.  [Citation.]' "  (*Ibid.*)

Finally, Nelson contends that although he "was 19 when he committed the current offenses, the reason he is subject to the de facto term of [life without parole] is because of the offenses he committed as a juvenile."  This statement is not accurate.  The serious felony prior and two strike priors admitted by Nelson were his June 18, 2009 convictions for robbery and attempted robbery.  Those crimes occurred on April 21, 2009 when Nelson was 18 years old.  They were not committed while Nelson was a minor. The court considered the armed robbery committed by Nelson when he was 14 years old in its sentencing decision, but this crime was not one of the strike priors that enhanced Nelson's sentence.

While Nelson's relative youth is a consideration in our disproportionality analysis (*People v. Sullivan, supra*, 151 Cal.App.4th at p. 570), it does not alone serve as a basis to conclude the sentence is unconstitutional.  Nelson was not a minor at the time of the present offenses, or at the time he committed the strike prior offenses.  No case has held that a 19-year-old adult is similarly situated to a minor for purposes of determining whether a sentence is cruel or unusual.  Nelson has not presented any evidence he "was an unusually immature youth and did not foresee the risk he was creating" by committing these crimes.  (*People v. Thompson* (1994) 24 Cal.App.4th 299, 306.)  The constitutional prohibition against sentencing juvenile offenders to life without the possibility of parole

8

solely for a nonhomicide offense is not applicable here. (Cf. *Graham v. Florida, supra*, 130 S.Ct. 2011; *People v. Mendez* (2010) 188 Cal.App.4th 47.)

Nelson has not shown the sentence he received is cruel or unusual punishment under the State or Federal Constitutions and we decline to overturn his sentence on this ground.

## II

Nelson also appeals the court's decision not to dismiss one or both of his strike priors. Section 1385, subdivision (a) provides that a trial court "may, either of [its] own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." (§ 1385, subd. (a).) In *Romero,* the court concluded that section 1385, subdivision (a) permits a court to strike felony prior conviction allegations in cases brought under the Three Strikes law. (*Romero, supra,* 13 Cal.4th at pp. 529-530.) The *Romero* court emphasized that a "court's discretion to strike prior felony conviction allegations in furtherance of justice is limited. Its exercise must proceed in strict compliance with section 1385(a), and is subject to review for abuse." (*Id.* at p. 530.)

*Romero* noted the "amorphous concept" of "in furtherance of justice 'requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People,*' " and concluded that "a court abuses its discretion if it dismisses a case, or strikes a sentencing allegation, solely 'to accommodate judicial convenience or because of court congestion.' [Citation.] A court also abuses its discretion by dismissing a case, or a sentencing allegation, simply because a defendant

9

pleads guilty. [Citation.] Nor would a court act properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.' [Citation.]" (*Romero, supra,* 13 Cal.4th at pp. 530-531.)

The Supreme Court refined the standard for dismissing a strike prior "in furtherance of justice" in *People v. Williams* (1998) 17 Cal.4th 148. "The court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 161.)

Finally, in *People v. Carmony* (2004) 33 Cal.4th 367 (*Carmony* ), the court held that a sentencing court's *refusal* to dismiss or strike a prior conviction allegation is also subject to review under the "deferential abuse of discretion standard." (*Id*. at p. 376.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.]

10

Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at pp. 376-377.)

"Thus, the three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Carmony, supra,* 33 Cal.4th at p. 378.) "In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]." (*Ibid.*)

Here, before denying Nelson's *Romero* motion, the court reviewed Nelson's statement in mitigation and *Romero* motion, the accompanying psychologist's report, Nelson's probation report, and the prosecution's sentencing statement and opposition to granting *Romero* relief. Before issuing its ruling, the court also heard counsels' arguments. In denying the motion, the court expressly recognized its obligation under *Romero* and its progeny to "look at the priors, the recency of the priors, the violence of the [strike priors], the rest of [Nelson's] criminal history and the current offenses" before deciding whether to exercise discretion to dismiss the strike priors.

The court was aware of its discretion under section 1385 and carefully considered whether Nelson fell outside the sentencing scheme of the Three Strikes law. In deciding

11

not to dismiss the strike priors, the court emphasized Nelson was on probation for his strike priors at the time of the most recent string of robberies, noting "the striking thing for me was the fact that there's such a little time lag between the committing of offenses, when he's released and the commission of these new violent crimes." The court also noted that Nelson had been given leniency before, despite the fact that he had a conviction for armed robbery as a juvenile, and that he had failed in drug treatment.

Nelson has not pointed to any evidence in the record suggesting or showing the existence of extraordinary circumstances that would justify striking one or both of his strike prior convictions. (See *Carmony, supra,* 33 Cal.4th at p. 378.) Nor has he argued that the court considered any impermissible factors in refusing to strike the strike priors. Nelson's recidivist record and the serious and violent nature of the crimes he committed, despite prior leniency and opportunity for reform, brought him squarely within the legislative purpose of the Three Strikes law. (See *People v. Ayon* (1996) 46 Cal.App.4th 385, 399 ["Recidivism in the commission of multiple felonies poses a manifest danger to society justifying the imposition of longer sentences for subsequent offenses."].) Based on the evidence in the record and the court's consideration of the various factors in light of such evidence, we conclude the court did not abuse its discretion in refusing to strike one or both of Nelson's strike prior convictions.

## DISPOSITION

The judgment is affirmed.

BENKE, Acting P. J.

WE CONCUR:

McINTYRE, J.

IRION, J.

13