Filed 6/30/16  P. v. Itehua CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ISRAEL LORENZO ITEHUA,<br><br>    Defendant and Appellant. | B265575<br><br>(Los Angeles County<br>Super. Ct. No. VA128373) |

APPEAL from a judgment of the Superior Court of Los Angeles County. John A. Torribio, Judge.  Affirmed as modified.

Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, and Yun K. Lee, Deputy Attorney General, for Plaintiff and Respondent.

* * * * * *

A jury convicted Israel Lorenzo Itehua (defendant) of two counts of attempted murder, and the trial court sentenced him to prison for 85 years to life. On appeal, defendant argues that his sentence should be reduced (1) because the five-year enhancement imposed under Penal Code section 12022.7,[1] subdivision (b) is duplicative of the 25-year enhancement under section 12022.53, subdivision (d) and (2) because 85 years is a de facto life sentence, which constitutes cruel and unusual punishment for juveniles and for adults who are close to the age of majority. Defendant's first argument has merit; his second does not. We accordingly vacate the five-year enhancement and, due to a mathematical error, order that defendant receive two additional days of custody credit.

## FACTS AND PROCEDURAL HISTORY

Defendant is a member of the 18th Street gang. In November 2012, defendant and two other gang members approached an apartment complex during a child's birthday party. When one of the attendees told them that children were present, one of defendant's cohorts told her, "I don't give a fuck, bitch . . . . We're from 18th Street," and punched her in the face. A few moments later, defendant pulled out a gun and opened fire on the attendee's adult sister; one of the bullets permanently paralyzed her from the chest down. As defendant and the others fled, defendant shot a homeless man who was in front of the apartment complex four times.

The People charged defendant with the willful, deliberate and premeditated attempted murder of (1) the party attendee (§§ 187, subd. (a) & 664), and (2) the homeless man (*ibid.*).[2] The People further alleged that defendant personally and intentionally discharged a firearm and proximately caused great bodily injury (§ 12022.53, subd. (d)), that he personally inflicted great bodily injury (§ 12022.7,

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     The People also charged defendant's two cohorts with both attempted murders and one of his cohorts with robbery (§ 211). Only defendant's case is before us now.

subd. (b)), and that the crime was committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(4)).

A jury convicted defendant of both counts of willful, deliberate and premeditated attempted murder and also found true the firearm allegation, the great bodily injury allegation and the gang allegation.

The trial court imposed a prison sentence of 85 years to life. Specifically, the court imposed a prison sentence of 45 years to life on the first attempted murder count, comprised of 15 years to life on the attempted murder (§ 186.22, subd. (b)(5) [requiring minimum 15-year term for any crime punishable by life in prison]), plus an additional 25 years for the personal and intentional discharge of a firearm causing great bodily injury (§ 12022.53, subd. (d)), plus another five years for personally inflicting great bodily injury (§ 12022.7, subd. (b)). The court then imposed a consecutive prison sentence of 40 years to life on the second attempted murder count, comprised of 15 years to life on the attempted murder plus 25 years for the intentional discharge enhancement.

Defendant timely appeals.

## DISCUSSION

### I. Must the Section 12022.7 Enhancement Be Stayed?

Defendant argues that the trial court erred in imposing the five-year enhancement for personally inflicting great bodily injury under section 12022.7, subdivision (b) *and* imposing the 25-year enhancement for personally and intentionally discharging a firearm causing great bodily injury under section 12022.53, subdivision (d). As the People concede, defendant is correct. Section 12022.53, subdivision (f) explicitly provides that "[a]n enhancement for great bodily injury as defined in Section 12022.7 . . . shall not be imposed on a person in addition to an enhancement imposed pursuant to [section 12022.53,] subdivision (d)." (§ 12022.53, subd. (f).) As a result, the court should have imposed but stayed the section 12022.7 enhancement. (See *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1129-1130 [noting that a stay of the second enhancement is appropriate].) Defendant's sentence on the first attempted murder count should be reduced to 40 years to life, and his total sentence revised to 80 years to life.

3

## II.    Does Defendant's 80-Year Sentence Constitute Cruel and Unusual Punishment?

Defendant next contends that a sentence of 80 years to life is a de facto life sentence without the possibility of parole; that the imposition of such a sentence upon a juvenile constitutes cruel and unusual punishment under *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*); and that he should be treated as a juvenile—and we accordingly should apply *Caballero* to him—because he committed the attempted murders just 14 months after his 18th birthday.  "Whether a punishment is cruel and/or unusual is a question of law subject to our independent review."  (*People v. Palafox* (2014) 231 Cal.App.4th 68, 82-83 (*Palafox*).)

Both the United States and California Constitution prohibit the imposition of excessive sentences:  The United States Constitution bars the imposition of "cruel *and* unusual punishments" (U.S. Const., 8th Amend., italics added), while our state Constitution decries any "[c]ruel *or* unusual punishment" (Cal. Const., art. I, § 17, italics added).  In the context of evaluating the constitutionality of juvenile sentences, the difference in language does not translate to a difference in analysis.  (See *Palafox*, *supra*, 231 Cal.App.4th at p. 83; *People v. Mantanez* (2002) 98 Cal.App.4th 354, 358, fn. 7.)  Under both standards, courts look to the "'evolving standards of decency that mark the progress of a maturing society.'"  (*Estelle v. Gamble* (1976) 429 U.S. 97, 102, quoting *Trop v. Dulles* (1958) 356 U.S. 86, 101 (plur. opn. of Warren, J.); *People v. Clark* (1970) 3 Cal.3d 97, 99.)

Over the last decade, the United States and California Supreme Courts have construed the constitutional guarantee against cruel and unusual punishment to place ever-greater limits on the range of sentences that may be imposed upon juvenile offenders.  In *Roper v. Simmons* (2005) 543 U.S. 551 (*Roper*), the Court held that a person who was a juvenile at the time of his or her crime could not be sentenced to death.  (*Id.* at p. 568.)  Five years later, the Court in *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*) held that a person who was a juvenile at the time of committing a crime other than homicide could not be sentenced to life without the possibility of parole.  (*Id.* at

4

p. 74.) Unlike adult offenders, *Graham* reasoned, juvenile offenders are entitled to "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," and a sentence of life without the possibility of parole denies them such an opportunity. (*Id.* at p. 75.) Two years later, the Court in *Miller v. Alabama* (2012) 132 S.Ct. 2455 (*Miller*) extended *Graham* to homicides, ruling that any person who was a juvenile at the time he committed *any* crime could not be sentenced to life without the possibility of parole. (*Id.* at p. 2464; see also *Montgomery v. Louisiana* (2016) 136 S.Ct. 718, 735-736 (*Montgomery*) [ruling that *Miller* applies retroactively to cases on collateral review].) Seven weeks after *Miller* was handed down, our Supreme Court in *Caballero* held that *Miller*'s rule applied to a determinate term of years if that term was so long that it "falls outside the juvenile offender's natural life expectancy" and thus amounts to a "de facto" sentence of life without the possibility of parole. (*Caballero*, *supra*, 55 Cal.4th at pp. 265, 268-269.)

This line of authority has repeatedly cited three reasons for its differential treatment of juveniles: (1) "children have a '"lack of maturity and an underdeveloped sense of responsibility,"' leading to recklessness, impulsivity, and heedless risk-taking [citation]"; (2) "children 'are more vulnerable . . . to negative influences and outside pressures,' including from their family and peers; they have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings [citation]"; and (3) "a child's character is not as 'well formed' as an adult's; his traits as 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity]' [citation]." (*Miller*, *supra*, 132 S.Ct. at p. 2464, quoting *Roper*, *supra*, 543 U.S. at pp. 569-570; see also *Montgomery*, *supra*, 136 S.Ct. at p. 733; *Graham*, *supra*, 560 U.S. at p. 68; *Caballero*, *supra*, 55 Cal.4th at p. 266.)

This line of authority has also steadfastly used the same definition of a juvenile offender—namely, a person who was under the age of 18 when he committed his crime(s). (*Miller*, *supra*, 132 S.Ct. at p. 2460; *Graham*, *supra*, 560 U.S. at pp. 74-75; *Roper*, *supra*, 543 U.S. at p. 568; see also *Caballero*, *supra*, 55 Cal.4th at p. 266 [applying cases to a 16-year-old defendant].)

5

Defendant asks us to redefine a juvenile offender—and thereby to extend the constitutional protections afforded to such an offender—as anyone, regardless of age, who possesses the same lack of maturity, vulnerability to negative influences, and lack of fully formed character as a juvenile. Defendant makes two arguments in support of his position.

First, defendant asserts that "'youth is more than a chronological fact'" (*Miller*, *supra*, 132 S.Ct. at p. 2467, quoting *Eddings v. Oklahoma* (1982) 455 U.S. 104, 115), and that many persons over the age of 18 at the time they commit a crime suffer from the same psychological and developmental infirmities as juveniles. Defendant argues that age is like IQ, and the United States Supreme Court has refused to limit the Eighth Amendment's bars on the execution of persons with "intellectual disabilit[ies]" to only those whose IQ's are 70 or lower. (*Hall v. Florida* (2014) 134 S.Ct. 1986, 1990 (*Hall*).) Defendant also cites *People v. Clark* (Ill.App.Ct. 2007) 869 N.E.2d 1019, 1036, 1038-1039, 1041-1042 (*Clark*), in which the Illinois Court of Appeal reduced an 18-year-old's sentence.

The chief defect with defendant's argument is that its premise has already been rejected by the United States and California Supreme Courts. In *Roper*, the Court explained: "Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest." (*Roper*, *supra*, 543 U.S. at p. 574; *Graham*, *supra*, 560 U.S. at pp. 74-75 [same]; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1380 [same]; see also *People v. Gamache* (2010) 48 Cal.4th 347, 404-405 [declining to extend protections granted to juvenile offenders to an 18 year old]; *People v. Abundio* (2013) 221 Cal.App.4th 1211, 1220-1221 [same]; *People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482 [same].) Even if we were at liberty to ignore this binding precedent (which we are not), neither *Hall* nor *Clark* dictates a

6

different result. *Hall* held that the constitutional line for "intellectual disability" could not be defined solely by one's IQ. (*Hall*, *supra*, 134 S.Ct. at p. 1990.) Here, defendant is not asking us to place limits on how we define the constitutional line for "juveniles"; he is asking us to move that line to offenders of any age who have the psychological or developmental make-up of juveniles. For its part, *Clark* merely held that a defendant's 44-year sentence should be reduced to 36 years in light of certain mitigating factors; it had nothing to do with the constitutional limits on juvenile sentences. (*Clark*, *supra*, 869 N.E.2d at pp. 1036, 1038-1039, 1041-1042.)

Second, defendant points to the evolution of section 3051. In 2013, our Legislature enacted that statute to grant persons who committed crimes while under the age of 18 and who were sentenced to indeterminate life sentences or to determinate terms of 15 years or longer the right to a "youth offender parole hearing" (§ 3051), ostensibly to satisfy *Graham'*s requirement that juvenile offenders have a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" (*Graham*, *supra*, 560 U.S. at p. 75).[3] In 2015, our Legislature amended section 3051 to extend the right to these hearings to anyone who was "under 23 years of age at the time of his or her controlling offense." (§ 3051, subd. (a)(1).) Defendant asserts that this expansion is evidence of our Legislature's view that offenders over the age of 18 (and under the age of 23) should be treated the same as chronologically juvenile offenders. This overlooks a critical point: The protections our Legislature chooses to grant as a matter of legislative grace do not alter the constitutional commands of the cruel and unusual punishment provisions. (Accord, *People v. Trujillo* (2006) 40 Cal.4th 165, 174 ["'that is a matter of legislative grace, not constitutional command'"], quoting *Monge v. California* (1998) 524 U.S. 721, 734.) What is more, defendant is a beneficiary of our Legislature's grace, as he—an offender under the age of 23—will be entitled to a "youth offender parole hearing."

---

[3] The constitutional adequacy of these alternative proceedings is pending before our Supreme Court in *In re Alatriste*, review granted February 19, 2014, S214652 and *In re Bonilla*, review granted February 19, 2014, S214960.

For all these reasons, we reject defendant's argument that his sentence constitutes cruel and unusual punishment.

### III. Is Defendant Entitled to Two More Days of Custody Credit?

Defendant lastly argues that he was in custody from November 7, 2013, until his sentencing hearing on May 21, 2015, and that the trial court committed a mathematical error in giving him only 559 days of custody credit rather than 561 days. We agree. "A defendant is entitled to actual custody credit for 'all days of custody' . . . including partial days. [Citations.] Calculation of custody credit begins on the day of arrest and continues through the day of sentencing." (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 48; § 2900.5, subd. (a).) Because there are 561 days between November 7, 2013 and May 21, 2015, including those first and last days, defendant is entitled to two more days of custody credit. This does not alter his entitlement to good time/work time credits.

### DISPOSITION

The judgment is ordered modified by staying the five-year sentence for personal infliction of great bodily injury under section 12022.7, subdivision (b) and by awarding defendant 561 days of actual custody credit. The clerk of the superior court is directed to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
HOFFSTADT

We concur:


_____, P.J.
BOREN


_____, J.
CHAVEZ

8