Filed 3/28/23  P. v. Archuleta CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID CLAIR ARCHULETA,<br><br>    Defendant and Appellant. | A165144<br><br>(Lake County Super. Ct. Nos. CR959736A & CR959539B) |

Defendant David Clair Archuleta appeals a final judgment following his conviction by a jury for residential burglary and possession of a firearm. The trial court sentenced Archuleta to 17 years and 4 months in prison. Archuleta contends that the trial court erred in denying his motion for a mistrial after the prosecution elicited testimony about an out-of-court statement by his girlfriend, in violation of the court's in limine ruling excluding all such testimony. Archuleta further contends that his sentence constitutes cruel and unusual punishment under the state and federal Constitutions. We find no error and affirm.

BACKGROUND

## A. Procedural History

Archuleta was charged with residential burglary (Pen. Code,[1] § 459; counts 1, 4, 6, 7), receipt of stolen property exceeding $950 in value (§ 496, subd. (a); count 2), possession of ammunition by a prohibited person (§ 30305, subd. (a)(1); counts 3, 9, 11), vandalism causing damage in excess of $400 (§ 594, subd. (a); count 5) and possession of a firearm by a convicted felon (§ 29800, subd. (a)(1), counts 8, 10). The information further alleged that Archuleta had previously been convicted of a serious or violent felony (§ 667, subd. (d), § 1170.12, subd. (b)) and a special allegation of a prior serious felony conviction (§ 667, subd. (a)(1)).

On March 18, 2022, the jury found Archuleta guilty of all counts other than counts 4 and 5. The trial court thereafter granted the prosecution's motion to strike the special allegation pursuant to section 667, subdivision (a)(1). The trial court found the prior strike allegation to be true. The trial court sentenced Archuleta to 8 years and 8 months in prison, which it doubled to 17 years and 4 months based on the prior strike. (§ 1170.12, subd. (c).)

Archuleta now appeals.

## B. Facts

This case involves three residential burglaries that occurred in Clearlake Oaks within the same week.[2] On December 24, 2020, David Barnett contacted the police after various items were stolen from his garage.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] There was a fourth residential burglary in this same neighborhood that we do not summarize since Archuleta was acquitted of the counts related to this burglary.

The items included a new generator, a camp barbecue, and a Bluetooth speaker. On or around December 25, 2020, Jesse Borgnis went to his vacation house in Clearlake Oaks after being informed of a break-in there. The doorjamb to the front door was broken, and the house was in disarray. Items were missing from almost every room, including a television and television equipment, a wakeboard, a dartboard, a bottle of liquor, and other small miscellaneous items. Finally, on December 29, 2020, Richard West went to his vacation house in Clearlake Oaks after he was likewise notified of a break-in. When he arrived, he observed that the front door appeared to have been pried open by a tool, based on the damage to the doorframe. Several items were missing from the house, including a television and a security camera.

Shortly before 1:00 a.m. on December 30, 2020, Deputy McCabe was on patrol and saw a vehicle down the street with no headlights on, parked in front of a residence and partially blocking the roadway. Someone was either loading or unloading property from this vehicle. McCabe became suspicious because he knew there had been several burglaries in this immediate area in the last several weeks. McCabe approached the residence and saw Archuleta on the front porch, setting down what appeared to be a new generator that still had tags on it.[3] McCabe then searched the vehicle, which he confirmed belonged to Archuleta, and found gloves, pry bars, and chisels inside.

McCabe entered the residence to secure it while he waited for the issuance of a search warrant. During the execution of the warrant, he and another deputy found a box of .30 caliber ammunition on a shelf as well as a loaded pistol in a box in the bedroom. Various items that were reported

---

[3] This generator was later identified as Barnett's and returned to him, along with his camp barbecue.

3

stolen were also found in the residence, including the television, wakeboard, bottle of liquor, and security camera.

At 10:00 p.m. on February 3, 2021, Deputy McCabe returned to the residence to arrest Archuleta. McCabe knew that Archuleta's girlfriend, Nicole Hard, lived there based on previous contact he had with her, and he believed that Archuleta lived there as well. Both Archuleta and Hard were inside and were placed under arrest. During the arrest, Archuleta asked McCabe to retrieve his wallet from inside his backpack in the living room. McCabe did so and found a large capacity magazine and a cartridge in the backpack. Archuleta then told McCabe that the magazine and cartridge belonged to the gun obtained on the search warrant on December 30th.

After Archuleta denied having any other firearms, McCabe searched the residence and found, behind the dryer, another loaded pistol that contained the same type of ammunition as the ammunition found in Archuleta's backpack. No record was located when McCabe performed a record check on this firearm. McCabe also found a box of cartridges in the kitchen and four loaded magazines in a jewelry box in one of the bedrooms. He observed that both male and female clothing were inside this bedroom.

**DISCUSSION**

### A. Defendant's Motion for Mistrial

Archuleta contends that the trial court erred in denying his motion for mistrial after Deputy McCabe improperly testified that Hard had told him that Archuleta lived at the residence.[4] We disagree.

---

[4] Hard was a codefendant at trial but was dismissed from the case prior to jury deliberations after the trial court granted the prosecution's motion to dismiss based on insufficient evidence.

4

### 1. Relevant Background

Prior to trial, Archuleta's counsel moved in limine to exclude all counsel from referencing any out-of-court statements by Hard, including eliciting such testimony from any witnesses. The trial court granted the motion and ordered "that no statements of Ms. Hard be introduced unless the issues [are] raised outside the presence of the jury and the Court allows such statements." The court further directed the prosecutor to admonish his witnesses on this subject.

During direct examination, the prosecutor asked Deputy McCabe if he was aware of whether Archuleta resided at the subject residence. McCabe testified, "He did." When asked how he knew this, McCabe responded, "He was at the residence, and I believe Ms. Hard stated that he lived there." At this point, Archuleta's counsel interjected and moved for a mistrial outside the presence of the jury. Archuleta's counsel argued there had been no other direct evidence that Archuleta lived at the subject residence, so McCabe's testimony was significant and an admonishment would not be a sufficient cure.

The prosecutor apologized for his oversight and explained that he did not admonish McCabe beforehand because he did not anticipate that McCabe would refer to Hard's statement on the stand. The prosecutor agreed that the subject testimony should be stricken but argued that a mistrial was unwarranted since an admonition to the jury would be sufficient.

The trial court denied the motion, reasoning that a mistrial was unwarranted because "[t]he evidence does show Mr. Archuleta was present there. So whether he actually lived there or he was there temporarily, I don't know how much that's going to impact the jury's decision." The court further held that "the jury can be admonished not to consider that statement. And

5

there's no reason to believe that they can't comply with that admonition . . . ." The court asked Archuleta's counsel if he would like an admonition to be given to the jury. Counsel declined and stated that it would only call further attention to the testimony. The court therefore ordered the testimony stricken but did not admonish the jury.

### 2. The Trial Court Did Not Err in Denying the Motion.

We review the trial court's denial of a motion for mistrial under the deferential abuse of discretion standard. (*People v. Williams* (1997) 16 Cal.4th 153, 210.) "A mistrial should be granted if the court is apprised of prejudice that it judges incurable by admonition or instruction. [Citation.] Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." (*People v. Haskett* (1982) 30 Cal.3d 841, 854.)

Improper witness testimony is not incurably prejudicial, for example, where it is merely cumulative of other evidence and thus by itself "cannot be regarded as substantially incriminating." (*People v. Dominguez* (1981) 121 Cal.App.3d 481, 508.) This is especially true where "[t]he cumulative nature of the evidence, coupled with the strong admonition of the trial judge, dissipated any injustice from admission of the evidence." (*Ibid.*)

Here, the trial court offered to admonish the jury not to consider McCabe's testimony that Hard told him Archuleta lived at the subject residence. Archuleta's counsel strategically declined this offer so as not to draw further attention to the statement. However, there is no evidence to suggest that the jurors would not have been able to follow this admonition had it been given to them, thus curing any prejudice. Absent contrary evidence, "[j]urors are presumed to understand and follow the court's instructions." (*People v. Holt* (1997) 15 Cal. 4th 619, 662.)

6

Even in the absence of an admonition, the subject testimony was not incurably prejudicial to Archuleta in light of the other cumulative evidence supporting a conclusion that Archuleta was at least temporarily living at the residence. Archuleta was there on two separate occasions one month apart. On both occasions, it was late at night on a weekday. On the first occasion on December 30, 2020, he was observed unloading a generator into the residence at 1:00 a.m. During his search of the residence, Deputy McCabe observed male clothing in one of the bedrooms, along with Archuleta's interim driver's license and a folder on the bed that contained some court paperwork for Archuleta. A pistol was also found in this bedroom, and when ammunition was later found in Archuleta's backpack, he explained that the ammunition belonged to this pistol. Even without the subject testimony, a jury could have reasonably concluded based on all this evidence that Archuleta lived there.

Moreover, as the trial court held, whether Archuleta was living at the residence or temporarily staying there was not, as Archuleta contends, dispositive or fatal to his defense. The prosecutor asserted in his closing argument that it is plausible for someone who possesses contraband and stolen property to store them at someone else's house. There was ample evidence that connected Archuleta to the stolen items, the ammunition, and the firearms that were found in the residence. With respect to the stolen property, Deputy McCabe observed Archuleta unloading a new generator late at night the same week of the reported burglaries in that same area. Gloves, pry bars, and chisels were found in Archuleta's car this same night. One of the pry bars was later taken to one of the burglarized homes where damage was observed on the doorframe. Photographs were presented at trial which showed that the pry bar matched the damage on the doorframe. The items

7

reported stolen from this home were recovered from the residence and returned to the owner.

There was also evidence that linked Archuleta to the ammunition and firearms found in the residence. When Deputy McCabe found ammunition in Archuleta's backpack during his arrest, he told McCabe that the ammunition belonged to the pistol found in the bedroom during McCabe's December 30, 2020 search. It would be logical to infer that the pistol, as well as the ammunition, belonged to Archuleta. The type of ammunition found in Archuleta's backpack was also the same as the ammunition in the second pistol that was found behind the dryer on February 3, 2021. This provided circumstantial evidence that the second pistol also belonged to Archuleta. Therefore, where Archuleta was residing at the time of these incidents was not dispositive of whether he possessed the firearms or the stolen property.

### B. Defendant's Sentence Does Not Constitute Cruel and Unusual Punishment.

Archuleta contends that his sentence of 17 years and 4 months in prison constitutes cruel and unusual punishment under the state and federal Constitutions. We disagree. First, Archuleta forfeited this claim by failing to raise it before the trial court during sentencing. (*People v. Brewer* (2021) 65 Cal.App.5th 199, 212). Second, even if we were to consider this claim on appeal, we would deny relief.

"Cruel and unusual punishment is prohibited by the Eighth Amendment to the United States Constitution and article 1, section 17 of the California Constitution. Punishment is cruel and unusual if it is so disproportionate to the crime committed that it shocks the conscience and offends fundamental notions of human dignity." (*People v. Mantanez* (2002) 98 Cal.App.4th 354, 358, fn. omitted.) As Archuleta himself concedes, our high court has upheld the constitutionality of sentences imposed under the

8

three strikes law that contained lengthier prison terms than the one here. (See *In re Coley* (2012) 55 Cal.4th 524, 562 [a sentence of 25 years to life for failing to register as a sex offender was not cruel and unusual punishment, especially in light of the defendant's prior criminal history which triggered the three strikes law].) We are bound by this authority.

Here, Archuleta was convicted of three residential burglaries. One of these burglaries occurred while the owner was in the house. The two other burglaries involved damage to the owners' real property. The fact that no one happened to be injured during these burglaries does not negate the seriousness of these crimes. Archuleta was also convicted of possession of ammunition and a firearm by a convicted felon, which poses a danger to public safety. The prior strike allegation that doubled Archuleta's sentence related to a felony conviction for arson. On this record and under the authority cited above, we do not find that Archuleta's sentence is so disproportionate to his crimes as to constitute cruel and unusual punishment.

## DISPOSITION

The judgment is affirmed.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
BROWN, J.

9