Filed 6/7/24  P. v. Johnson CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B327269 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA148587) |
| v. | |
| RALPH CORNELIUS JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Affirmed.

Loyola Law School Juvenile Innocence & Fair Sentencing Clinic, Christopher Hawthorne and Jakob Meuser, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Defendant Ralph Cornelius Johnson appeals from a resentencing order in which the trial court struck three one-year priors, but declined to strike Johnson's third strike, which would have led to his immediate release from prison. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

On May 28, 1999, a jury found Johnson guilty of four counts of possessing a check with intent to defraud (Pen. Code, § 475) and one count receiving stolen property (Pen. Code, § 496).[1] The jury found Johnson had been convicted of two prior serious felonies for purposes of the Three Strikes law (§ 1170.12); specifically, he had been convicted in 1982 of attempted murder and attempted robbery. Because the check fraud was his third strike, he received a sentence of 28 years to life, comprised of four concurrent terms of 25 years to life plus three one-year prior prison enhancements under section 667.5, subdivision (b). The court stayed the sentence on the count for receiving stolen property. Johnson's convictions were affirmed on direct appeal. (*People v. Johnson*, B133580 (May 11, 2000) [nonpub opn.].)

On February 9, 2022, Johnson filed a petition for resentencing under section 1172.75 (former section 1171.1) requesting that the trial court strike his three one-year enhancements for prior prison terms and conduct a full resentencing. The trial court initially denied Johnson's petition without a hearing or appointing counsel based on its belief that "there is no provision for a defendant to initiate the process" set forth in section 1172.75, and that the process had to be initiated by the department of corrections.

After Johnson obtained counsel and moved for reconsideration, the trial court recalled his sentence and

---

[1]     All statutory references are to the Penal Code.

scheduled the matter for a hearing. Johnson then filed a supplemental brief, in which he requested the court "exercise its discretion and resentence [Johnson] to a determinate sentence that would result in his release from prison." The People filed their response to Johnson's petition for resentencing, which contained various exhibits, including a recent "Comprehensive Risk Assessment" report written by forensic psychologist Wendy Chan, Psy.D. for the parole board, and transcript of the parole board hearing, including the testimony of Dr. Irvine.

In her report, Dr. Chan concluded that Johnson represented a "[h]igh risk for violence," and that he "would benefit from showing continued compliance with his mental health treatment [and] developing additional coping strategies for managing criminality and negative emotions or increase in his symptoms." Dr. Irvine, who had been meeting with Johnson at least once a month for about two years at that point, testified to the following: "My concern is that . . . since 2008 [Johnson] has been on [a mandatory medication] order and without that order in place, though I believe that he is making progress and it sounds like over the course of the last several years has made some strides, that temptation to stop that medication or even the lack of insight as a result of his illness would be too difficult for him to overcome and that in all likelihood despite his voicing his desire and willingness to take the medicine that he may stop it. And then . . . the consequences would be very severe." Dr. Irvine further explained that "in the past, [Johnson] has decompensated fairly significantly and severely off of medication, which has resulted in his inability to care for himself to the point where he has smeared feces on his cell believing that they would protect him against assassins. My concern is that off of medication that

3

those types of behaviors would recur and that he may become hostile or aggressive or even a danger to himself."

Johnson filed a reply.

The resentencing hearing was held on November 7, 2022. Johnson's counsel argued that because his four counts of possession of checks with intent to defraud cannot currently be charged as strikes, the court "should resentence him to those sentences without the strike, [which] would lead to a determinate term that would allow for immediate release." The court rejected that argument. Counsel also argued that Johnson should be resentenced under section 1385, subdivision (c), which the court also rejected.

The court recognized that it had discretion to strike the strike under *Romero*. Johnson's counsel argued that one of Johnson's two strikes (attempted robbery and attempted murder) should be stricken because they occurred on the same occasion. The court disagreed, observing that the crimes were "distinct," requiring "a different intent and a different act."

The trial court then considered various factors: Johnson was convicted of "two violent strikes in 1982," after which he was "sent back to prison on five separate years"; he had "been in prison almost his entire life"; Johnson was a "career criminal," who had been convicted in 1978 for a "hit and run" and "receiving stolen goods," in 1979 for "receiving stolen property," in 1982 for attempted murder and attempted robbery (the two strikes), which both "involved use of a weapon"; and while out on parole, he was charged with receiving stolen property, altering a driver's license, forgery, and other parole violations.

The trial court acknowledged some factors that were favorable to Johnson, such as the lack of damage from and

4

nonviolent nature of the most recent check fraud convictions, noting however it was not favorable to Johnson that the crime involved some level of sophistication. Johnson had also "failed to successfully complete probation or parole, basically any time in his life; this is a negative factor." The court further noted that in the state prison, Johnson is "in a special program, [enhanced outpatient program]," and "not in [the] general population." Thus, the court reasoned, "[he] . . . has not shown, on some macro level, that he can follow rules and be medicine compliant in a normal, free-community setting." He cited Dr. Chan's report that "there was a high risk of violence if [Johnson] was not medically compliant."

The trial court then turned to consideration of Johnson's "background, character[,] and prospects," some of which "are beneficial to [Johnson]." Citing *People v. Strong* (2001) 87 Cal.App.4th 328 (*Strong*), the court stated "middle age considered alone does not remove a defendant from the spirit of the Three Strikes law. Otherwise, those criminals with the longest criminal records over the longest period of time would have a built-in argument that the very factor that takes them within the spirit of the Three Strikes law, a lengthy criminal career, has the inevitable consequences of making them older . . . that takes them outside the law's spirit." The court noted that "older people do commit crimes; they commit murders, they molest children. And, frankly, [Johnson], at 60, was still engaged in some kind of violent activity by attacking another inmate." Aside from the latter incident, which was due to mental illness, the fact that Johnson had largely been discipline-free in his recent history at prison was "a factor in his favor." However, the court observed that Johnson's overall "performance in state

5

prison [has] been uneven and problematic"; for example, he had possessed a cell phone in 2010 and battered an inmate with a weapon in 2006.

The court then addressed Johnson's "mental health problems, involving his schizophrenia and his future dangerousness if released," which it noted "affects [its] assessment of [Johnson's] background, character[,] and prospects." Recognizing it was not "bound" by the parole board's determinations, the court explained that it was considering the information and opinions underlying the parole board's decision, including Dr. Chan's report and Dr. Irvine's testimony, because the people involved in the board's decision were "in a much better position to evaluate his mental health problems." The court concluded that Johnson's "mental health condition weighs against striking [his] strike," echoing Dr. Irvine's concern that "there is a good chance that [Johnson] would stop taking his medication in his present state, because he has not yet developed the understanding of the need for the medication. The consequences of [him] not taking his medication, not receiving therapy, are very concerning to the court." The trial court acknowledged various letters of support from family members and others, but observed "they are in many cases unrealistic and do not offer a comprehensive support system needed to assist [Johnson] with his ongoing problems. They are letters of love and express a hope that [he] is a changed man. None of the letters show any appreciation of [his] mental health problems." After expressing "concern[]" about Johnson's "prospects for a stable life," the court stated that "there are no extraordinary circumstances, or even reasons, that would motivate a reasonable judge to grant his release. [Johnson] has a long and continuous

6

criminal record.  Several of the charges against [him] are serious and involve violence.  While there are some mitigating factors that have developed since [his] original sentence, and I have considered them . . . they are mostly extrinsic to the three strikes scheme."

The court declined to strike Johnson's strike under *Romero*. After striking Johnson's three one-year priors, the court imposed a sentence of 25 years to life, the determinate portion of which Johnson had already served.

## DISCUSSION

Johnson argues the trial court (1) committed legal error in refusing to consider dismissing his strike under section 1385, subdivision (c), and (2) abused its discretion in refusing to strike Johnson's strike under *Romero*; Johnson also urges this court to (3) declare his sentence unconstitutional under California's Constitution and (4) strike his 25-year-to-life sentence for his third strike under the California Racial Justice Act (§ 745).  We address each argument in turn.[2]

I.    *Section 1385, Subdivision (C) Does Not Apply to Prior Strike Convictions*

We reject Johnson's argument that the trial court committed legal error in refusing to consider dismissing Johnson's strike under section 1385, subdivision (c), because that provision does not apply to strikes.  "Whether the amendments to section 1385 apply to prior strike convictions is a question of

---

[2]    We grant Johnson's request for judicial notice of the memorandum redesignating his rule violation due to his mental illness and the order setting an expiration on the requirement that Johnson involuntarily submit to taking psychotropic medication.

statutory interpretation which we review de novo." (*People v. Burke* (2023) 89 Cal.App.5th 237, 242 (*Burke*).)

Section 1385, subdivision (c) provides: " '(1) Notwithstanding any other law, the court shall dismiss an *enhancement* if it is the furtherance of justice to do so, except if dismissal of that *enhancement* is prohibited by any initiative statute.' " (*Burke*, *supra*, 89 Cal.App.5th at p. 243.) The court in *Burke* observed that "[i]t is . . . well established that the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense." (*Ibid.*) Because "[t]he plain language of subdivision (c) of section 1385 applies only to an 'enhancement,' and the Three Strikes law is not an enhancement," subdivision (c) does not apply to the Three Strikes Law. (*Id.* at pp. 243-244.)

Citing *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1094-1095 (*Ortiz*), Johnson urges that this issue is "contested." He is mistaken. *Ortiz* did not address the issue, and every court that has, has agreed with *Burke*. (*People v. McDowell* (2024) 99 Cal.App.5th 1147; *People v. Dain* (2024) 99 Cal.App.5th 399; *People v. Olay* (2023) 98 Cal.App.5th 60; *People v. Cota* (2023) 97 Cal.App.5th 318; *People v. Tilley* (2023) 92 Cal.App.5th 771.) We join that chorus. We therefore have no occasion to analyze the factors a court should consider in exercising its discretion under section 1385, subdivision (c).

## II.     *The Trial Court Acted Within Its Discretion in Refusing to Strike Johnson's Strike Under* **Romero**

Under section 1385, subdivision (a) the trial court may, "in the furtherance of justice," order an action to be dismissed. This authority includes the power "to strike prior felony conviction allegations in cases brought under the Three Strikes law."

8

(*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 529-530.)  We review a trial court's refusal to strike a prior conviction for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 376 (*Carmony*).)  "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*Id.* at p. 377.)

"[T]he Three Strikes initiative . . . was intended to restrict courts' discretion in sentencing repeat offenders."  (*Carmony*, *supra*, 33 Cal.4th at p. 377.)  " 'To achieve this end, "the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' "  (*Ibid.*)

Factors for the court to consider in determining whether "the defendant may be deemed outside the scheme's spirit" such that he "should be treated as though he had not previously been convicted of one or more serious and/or violent felonies" are "the nature and circumstances of the defendant's present and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects."  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Johnson argues that "[t]here is no connection between whether [he] should have received [25] years to life . . . and the fact that he was recently denied parole," and that the trial court "improperly considered . . . parole denial as the main reason for ruling against his *Romero* motion."  We disagree on both points.

9

The trial court did not consider the mere fact Johnson had been denied parole. Rather, it considered the opinions of the psychiatrists who evaluated Johnson, upon which the parole board reasonably relied in making its decision. Dr. Chan concluded that Johnson presented a "[h]igh risk for violence," based in part on his "mental health symptoms and . . . poor response to treatment." Similarly, Dr. Irvine expressed concern, based on Johnson's history and mental illness, that if left to his own devices Johnson would stop taking his medication and "may become hostile or aggressive or even a danger to himself." The trial court properly considered these reports in determining whether Johnson fell within the "spirit" of the Three Strikes law, one purpose of which is to "protect[] the public from criminals." (*People v. Kilborn* (1996) 41 Cal.App.4th 1325, 1329.)

We similarly reject Johnson's argument that the court "improperly used [Johnson's] mental illness as an aggravating [rather than mitigating] factor." Johnson cites California Rules of Court, rule 4.423 to support his argument. That rule lists as a "[c]ircumstance[] in mitigation": that "[t]he defendant was suffering from a mental . . . condition that significantly reduced culpability for the crime." (Cal. Rules Court, rule 4.423(b)(2).) The trial court did not consider defendant more culpable due to his mental illness; to the contrary, it expressed that it was "very sympathetic to [Johnson's] position," and acknowledged he had "difficulty of all kinds." The court considered Johnson's mental illness to be an aggravating factor only insofar as it caused him to be "a danger to the community." This was proper.

Relying on *People v. Vargas* (2014) 59 Cal.4th 635 (*Vargas*), Johnson urges that the trial court "failed to consider the fact that [his] two strike priors arose out of the same occasion as a

10

mitigating factor." We agree with the trial court that *Vargas* is distinguishable because the defendant in that case committed two crimes (robbery and carjacking) "that were based on . . . the same act (forcibly taking the victim's car)" (*id.*, at p. 645), whereas here, Johnson's crimes of attempted murder and attempted robbery were not based on identical acts, despite having occurred on the same occasion. (See *People v. Avila* (2020) 57 Cal.App.5th 1134, 1141, fn. 6 [drawing the same distinction].) Although Johnson is correct that a trial court *may* consider the fact that two crimes occurred on the same occasion, that fact does not in itself compel a trial court to strike a prior. (See *ibid.*)

Nor are we convinced by Johnson's arguments that the trial court "failed to give proper weight to [Johnson's] age as a mitigating factor" or "to the nonviolent and victimless nature of [his] third-strike offense." The trial court did consider these factors. Johnson's belief that it should have given more weight to them falls short of showing the court's "decision [was] so irrational or arbitrary that no reasonable person could agree with it," as necessary to show an abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at p. 377 ["a ' "decision will not be reversed merely because reasonable people might disagree" ' "].)

In denying Johnson's *Romero* motion, the trial court considered various relevant factors, including some that weighed in Johnson's favor. For example, it acknowledged Johnson's check fraud did not ultimately cause anyone harm, that Johnson had loving and supportive family members who expressed their willingness to help him, and that Johnson did not have significant discipline issues in prison in the past 10 years. But the court also considered that Johnson had spent most of his life in prison, had committed numerous crimes over numerous years,

11

including violent crimes, had violated parole each time he was released, had attacked another inmate at the age of 60 (due to his mental illness), and there were recent and multiple reports from experts opining that Johnson was dangerous.  We are unable to conclude on this record that the trial court abused its discretion.

### III.    *Johnson's Sentence Was Not Cruel or Unusual*

Although Johnson has forfeited this constitutional claim by failing to raise it below (*In re Sheena K.* (2007) 40 Cal.4th 875, 880-881), we exercise our discretion to consider its merits (*Avila*, *supra*, 57 Cal.App.5th at p. 1145, fn. 12).  " 'Whether a punishment is cruel or unusual is a question of law for the appellate court, but the underlying disputed facts must be reviewed in the light most favorable to the judgment.' " (*People v. Mantanez* (2002) 98 Cal.App.4th 354, 358 (*Mantanez*); accord *Avila*, at pp. 1145-1146.)

" 'A punishment is cruel or unusual in violation of the California Constitution if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." ' " (*Avila*, *supra*, 57 Cal.App.5th at p. 1145; accord *In re Palmer* (2021) 10 Cal.5th 959, 972 (*Palmer*).)  "A claim of excessive punishment must overcome 'a considerable burden' [citation], and courts should give " 'the broadest possible discretion [citation] to the legislative judgment respecting appropriate punishment.' " (*Id.*, at p. 972.)

Courts reviewing excessiveness claims employ a three-pronged analysis:  (1) looking to the nature of the offense and the offender, with particular attention to the degree of danger both pose to society; (2) comparing the punishment with that which California imposes for more serious offenses; and (3) comparing the punishment with that prescribed in other jurisdictions for the

same offense.  (*Palmer*, *supra*, 10 Cal.5th at p. 973.)  Where, as here, the defendant is a recidivist, it is generally not cruel or unusual to enhance his sentence based on his recidivist status.  (*Avila*, *supra*, 57 Cal.App.5th at p. 1146; see *Mantanez*, *supra*, 98 Cal.App.4th at p. 359 [appellate courts have consistently found Three Strikes law not cruel or unusual].)  We must nonetheless consider whether " 'the ultimate punishment, all facts considered,' " is "disproportionate to the crime."  (*Avila*, at p. 1146.)

Citing *Avila*, *supra*, 57 Cal.App.5th at page 1146, Johnson argues that "[p]ast offenses alone will not justify imposition of an enhanced sentence," such that our focus must be on the most recent offense.  That Johnson's most recent strike was nonviolent is a factor that weighs in his favor.  However, we must consider not only the "nature of the offense," but also the "nature of the offender."  (*Ibid.*)  Our examination of the latter requires us to "take into account [Johnson's] recidivist behavior."  (*People v. Gray* (1998) 66 Cal.App.4th 973, 992 (*Gray*).)  In addition to having an extensive criminal history over the span of many years, including violent crimes and repeated parole violations, Johnson has a mental illness (schizophrenia) that predisposes him to violent behavior.  Johnson's sentence is not disproportionate in view of these factors.  (*Gray*, at pp. 992-993 [defendant's sentence of 25 years to life for attempted carjacking was not cruel or unusual in view of "his lengthy criminal history," "his recidivist behavior," untreated "drug problem," and "potential danger to the community"].)

We are not persuaded by Johnson's reliance on *Carmony*, *supra*, 17 Cal.App.4th 1066, in which the defendant received a third-strike sentence for failing to register as a sex offender

13

within five days of his birthday.  The defendant had not moved, so the authorities possessed his current address, and his failure to register was "a harmless violation of a regulatory requirement."  (*Id*. at pp. 1073, 1087.)  Johnson's third-strike offense is not an innocuous regulatory violation.  Although he was caught before he caused any actual harm, his crime involved a scheme to use stolen checks to defraud people.

Johnson provides no argument with respect to the second and third factors (intra- and interjurisdictional comparisons), and instead draws our attention to the Legislature's continued rollback of "aggressive enhancement regimes under the view that such sentences are unjust."  Although accurate, this observation is insufficient to meet Johnson's "considerable burden" to show his sentence is cruel or unusual under the California Constitution.

## IV.  *Racial Justice Act*

The Racial Justice Act (§§ 745; 1473, subd. (f); 1473.6, subd. (a)(3)) prohibits convictions and sentencing based on race, ethnicity, or national origin (§ 745, subd. (a)).  Pertinent here, "[a] violation [of the Racial Justice Act] is established if the defendant proves, by a preponderance of the evidence, . . . [that a] longer or more severe sentence was imposed on the defendant than was imposed on other similarly situated individuals convicted of the same offense, and longer or more severe sentences were more frequently imposed for that offense on people that share the defendant's race, ethnicity, or national origin than on defendants of other races, ethnicities, or national origins in the county where the sentence was imposed."  (§ 745, subd. (a)(4)(A).)

A defendant asserting a violation of the Racial Justice Act "may file a motion pursuant to [section 745], or a petition for writ

14

of habeas corpus . . . in a court of competent jurisdiction, alleging a violation of subdivision (a).  For claims based on the trial record, a defendant may raise a claim alleging a violation of subdivision (a) on direct appeal from the conviction or sentence.  The defendant may also move to stay the appeal and request remand to the superior court to file a motion pursuant to this section."  (§ 745, subd. (b).)  "If a motion is filed in the trial court and the defendant makes a prima facie showing of a violation of subdivision (a), the trial court should hold a hearing."  (*Id.*, subd. (c).)

Johnson requests that we remand this action and instruct the trial court to hold a hearing on his claim that "defendants of his race are and were much more likely to receive third-strike sentences," and "to be charged with a felony when the underlying crime is a 'wobbler.' "  We recognize that when the order Johnson appeals from was issued, in November 2022, section 745 applied only "prospectively in cases in which judgment ha[d] not been entered prior to January 1, 2021."  (Former § 745, subd. (j), added by Stats. 2020, ch. 317, § 3.5.)  Not until January 1, 2023, did the Racial Justice Act become applicable to "all cases in which judgment is not final."  (§ 745, subd. (j)(1).)  These facts have not impacted Johnson's ability to file a petition for habeas corpus since January 1, 2023, when the law became applicable to him— which he has not done.  We decline to remand this matter for the trial court to conduct a hearing on the claimed violation because that is not consistent with the procedure prescribed by section 745.

## DISPOSITION

We affirm the order.

                                        LEE, J.*

WE CONCUR:

MOOR, Acting P. J.

KIM, J.

---

\*      Judge of the San Bernardino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16